**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**WHIRLPOOL CORPORATION, LOCAL 808, affiliated with the International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC, the International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC, Local Union Number 1172, affiliated with the International Union, United Automobile Aerospace and Agricultural Implement Workers of America, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Defendants.**

**No. S 76–85.**

United States District Court, N. D. Indiana, N. D.

Feb. 3, 1978.

Abner W. Sibal, Washington, D. C., David M. Levin, Vivien C. Gross, Chicago, Ill., for plaintiff.

Lynnville G. Miles, Indianapolis, Ind., John A. Fillion, Detroit, Mich., Irving J. Smith, South Bend, Ind., Charles J. Griffin, Jr., David J. Parsons, Chicago, Ill., Timothy W. Woods, South Bend, Ind., for defendants.

## MEMORANDUM OPINION

ALLEN SHARP, District Judge.

On June 3, 1976 the Equal Employment Opportunity Commission pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, (hereinafter "Title VII"), filed a complaint against Whirlpool Corporation (hereinafter "Whirlpool") alleging that Whirlpool, at its LaPorte and Evansville, Indiana, facilities, has engaged in, and is continuing to engage in, employment practices made unlawful by Title VII.

The complaint originally filed alleged that Whirlpool, at both its Evansville and LaPorte facilities has: (a) denied female employees promotions and transfers because of their sex; (b) maintained sex-segregated job classifications; (c) discharged female employees because of their sex; and (d) treated disabilities caused by childbirth differently from other temporary disabilities as regards the duration of leave and the payment of benefits. These allegations were based upon charges filed by four individuals: (Carol Pinkerton (LaPorte Division—allegation of unlawful discharge); Nanie Smith (LaPorte Division—allegation of maintenance of sex-segregated job classifications and denial of promotions to females because of their sex); William Osos (LaPorte Division—allegation pertaining to maternity benefits); Janis Collins (Evansville Division—allegation pertaining to maternity benefits).

On November 1, 1976, by stipulation of counsel, the court dismissed the Evansville Division of Whirlpool from this action and struck that portion of the complaint based upon the charge of Janis Collins. And based upon the decision of the United States Supreme Court in *General Electric v.*

*Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the parties, by stipulation, dismissed with prejudice the charge of William Osos.

On October 21, 1977, the court denied Whirlpool's Motion for Summary Judgment in all respects and ordered the resumption of discovery. The complaint in the instant action, therefore, remains based upon the charges against Whirlpool (LaPorte) filed with the Commission by Nanie Smith and Carol Pinkerton and on the allegations made by these two charging parties.

Defendant Whirlpool now moves to dismiss the class aspects of the remaining allegations of Plaintiff's Complaint on the grounds that the Commission has failed to comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure. Whirlpool bases its argument on a recent opinion in *EEOC v. D. H. Holmes Co.,* 556 F.2d 787 (5th Cir. 1977), *reh. den.,* 565 F.2d 164 (5th Cir. 1977), which held that the Commission must comply with Rule 23, because the Commission is a member of each class of persons it seeks to represent.

Prior to March 24, 1972, the effective date of the amendments to Title VII, the Commission had no authority to file Title VII suits. Such authority was placed solely in the hands of aggrieved individuals, with the exception that the Attorney General could, under Section 707 of the Act, file "pattern or practice" suits. In 1972, the EEOC was given statutory authority to file suits under Section 706(f)(1). Effective March 24, 1974 the Section 707 authority previously vested in the Attorney General was transferred to the Commission. Nevertheless, the amendments retained the right of aggrieved persons to file suit.

Granting the Commission the power to institute lawsuits under Title VII was not meant to be mere duplication of the authority to institute such suits already granted to private individuals. Rather, the 1972 amendments to Title VII gave the Commission enforcement powers, because Congress viewed discrimination in employment as a wrong perpetrated upon society as a whole. Elimination of job bias was made a high national priority, a primary burden of which was to rest upon the Commission. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972); *EEOC v. General Electric Co.,* 532 F.2d 359 (4th Cir. 1976).

Because claims under Title VII involve the vindication of a major public interest, the Commission's litigious function is not identical to that of the private party. Nor does the Commission merely serve as a substitute for a charging party when the agency seeks enforcement of the Act. Aware of the Act's broad social and economic objectives and of the public interest served by the Commission in enforcing the Act, courts have consistently held that: the agency's standing to sue under Title VII cannot be controlled or determined by the standing of the charging party; and the Commission may assert the claims of all persons affected on behalf of the public interest. *EEOC v. General Electric, supra; EEOC v. Kimberly-Clark,* 511 F.2d 1352 (6th Cir. 1975).

Where the Commission bases its suit on an administrative charge, as here, the charge merely serves as a statutory vehicle by which the Commission vindicates its public purpose. Although the charges of Carol Pinkerton and Nanie Smith were the triggers which initiated agency action, the Commission's first responsibility is still to the public. The Commission must represent the public interest as well as the interests of the two charging parties, even though Ms. Pinkerton and Ms. Smith may be the immediate beneficiaries of this suit. *EEOC v. Occidental Life Ins. Co.,* 535 F.2d 533 (9th Cir. 1976), aff'd., 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). As stated in *EEOC v. Kimberly-Clark, supra,* and *EEOC v. Huttig Sash & Door,* 511 F.2d 453 (5th Cir. 1975):

> To hold otherwise . . . would be to continue treating the sole purpose of the Title to be the correction of individual wrongs rather than of public or 'societal'

wrongs as well as to deny the EEOC the right to be any more than a mere proxy for the charging party rather than what Congress by the Amendments of 1972 intended, i. e., the public avenger by civil suit of any discrimination uncovered in a valid investigation and subjected to conciliation under the Act.

Recognizing the fundamental distinction between the private and public interest, courts have acknowledged that a federal agency may not necessarily be able to serve both those interests at once. *Trbovich v. United Mine Workers of America, supra,* at 538, 92 S.Ct. 630; *U. S. v. Borden,* 347 U.S. 514, 74 S.Ct. 703, 98 L.Ed. 903 (1954). ". . . the interests of (the EEOC) in filing, prosecuting or settling a [Section] 706 case are not necessarily identical with the interests of individual employees who have been victims of invidious discrimination in employment. In achieving the broad social and economic objectives of the Act, the Commission may be more concerned with future compliance with the Act by employers than with redressing employee grievances that have accrued already. And on the other hand, individual employees may well be more interested in being compensated for the wrongs that they may have suffered individually than in future compliance with the Act on the part of employers." *McClain v. Wagner Electric Corp.,* 550 F.2d 1115 (8th Cir. 1977).

The Commission can never fulfill the requirements of Rule 23 because it is not a member of the class. As a prerequisite to seeking class certification under Rule 23, Fed.R.Civ.P., the representative party must be a member of the class. *3B Moore's Federal Practice,* Par. 23.04 at 23–254 (2d ed. 1976); see *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1969). This prerequisite is the most fundamental requirement of Rule 23(a), preceding determinations as to numerosity, typicality and adequacy of representation.

The Rule 23 prerequisites are mandatory. *Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir. 1974). Because of the extraordinary nature of class actions, such actions are not an exception to the legal principle that an individual is not bound by a judgment *in personam* in a suit in which he is neither a designated party nor a party by virtue of service of process. *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877). Thus membership in the class and adequacy of representation are of utmost importance, if the demands of due process are to be met. *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

Whirlpool bases its motion on the recent Fifth Circuit decision, *EEOC v. D. H. Holmes Co., supra.* In *Holmes,* the court assumed that because the Commission is established by Congress for the express purpose of eradicating the forms and effects of employment discrimination, the agency, by definition, becomes a member of any class of discriminatees it seeks to represent. This finding which places the Commission in the shoes of a private litigant and subjected the agency to Rule 23 requirements cannot survive scrutiny nor can it be reconciled with previous judicial pronouncements.

The expertise of the Commission in the area of employment discrimination, noted in *Holmes, supra,* 556 F.2d at 797, cannot automatically transform a federal agency into a member of a particular class of aggrieved discriminatees nor can such expertise alone adequately and fairly protect the private interests of those class members. Because the Commission has been given explicit statutory standing to sue for violations of Title VII and the right to seek redress for aggrieved individuals does not *per se* make the Commission a representative of the class.

Defendant Whirlpool also cites *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977), to support its contention that the Commission must comply with the same Rule 23 requirements as do private parties who bring Title VII class actions. In *East Texas Motor Freight,* the Supreme Court held that the Fifth Circuit had erred in certifying as a

class action a lawsuit brought by three private individuals concerning only their individual claims against the named defendant. The Supreme Court found, *inter alia,* that the appellate court had improperly discounted the private litigants' failure to move for certification at the district level and had improperly assessed the private plaintiffs' qualifications as appropriate class representatives. However, *East Texas Motor Freight* has no relevance to the issue presently before the court. The fact that a private litigant who brings a class action suit must certify that class under Rule 23 to insure the adequacy of the representation that those class members might expect to receive is not instructive on the issue of whether Rule 23 should or can apply to suits filed by the Commission.

The only class which the Commission can represent adequately and without conflict is the public as a whole, a group that is not at all the same as that comprised of individual employees who seek relief under the Act. Thus, in this action, the Commission is neither a member of the class 'of injured female employees at Whirlpool/LaPorte nor is the Commission their appropriate class representative. Rule 23, however, requires both class membership and adequate representative status, *Bailey v. Patterson, supra; People of State of Illinois ex rel. Bowman v. Home Federal Savings and Loan Association,* 521 F.2d 704 (7th Cir. 1975); both conditions that the Commission cannot meet.

Section 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5 gives the Commission the right, hence, the standing to sue to compel compliance with Title VII, after certain administrative charge-handling prerequisites have been met. By statute, the Commission is a real party in interest. Nevertheless, the Commission is not the only real party in interest; aggrieved employees may also claim that status.

When the Commission seeks to enforce Title VII, it may be more concerned with general injunctive and affirmative relief which affects future compliance with the Act than with redressing employee grievances that have already occurred. Consequently, public and private interests may, as was stated previously, under certain circumstances diverge during the course of a Commission suit. Recognizing that the Commission cannot always adequately represent individual interests, Congress provided that private and public enforcement of the Act be cumulative.

Section 706(f)(1) of Title VII provides that the Commission and the aggrieved charging party may both individually file suits. That section also provides for intervention as of right by an aggrieved charging party in any suit filed by the Commission, and in the alternative, for permissive intervention by the Commission in a suit filed by an aggrieved charging party.

The distinction in Section 706(f)(1) between the enforcement rights, both for purposes of direct suit and intervention, of individual charging parties and those of the Commission demonstrates Congressional recognition of the fact that the public interests served by the Commission differ significantly from the more limited interests of charging parties. And in interpreting Section 706(f)(1), courts have also recognized the separate and different interests represented by the Commission and by the aggrieved parties when both sue to enforce Title VII. An aggrieved person's intervention as of right into a Commission suit has been regarded as a guarantee that the intervenor's interests will be adequately represented. *Atlantis Development Corporation v. U. S.,* 379 F.2d 818 (5th Cir. 1967). And, too, in cases where a private person has already filed a Title VII action, courts have permitted the Commission to file a separate action, when the scope of its complaint is broader than that of the private litigant. *EEOC v. Occidental Life Insurance Co., supra; EEOC v. Kimberly-Clark, supra; EEOC v. General Electric, supra.*

Court decisions dealing with the issues of *res judicata* and collateral estoppel in Title VII actions also reflect judicial awareness of the separate interests represented by the aggrieved person and by the Commission. In *Kimberly-Clark, supra,* the Sixth Circuit

held that because the Commission had not been in privity with a private charging party, the settlement agreement between that party and the defendant employer did not bar the agency, on principles of res judicata and collateral estoppel, from filing its own independent lawsuit against that same employer.

In *Kimberly,* the Commission had never agreed on the settlement reached between the party and the employer. So to vindicate the public interest, which is by definition broader than that of the charging party, the Commission filed its own action. See also *McLean Trucking Co., supra; Tipler v. Du Pont Co.,* 443 F.2d 125 (6th Cir. 1971); *EEOC v. Eagle Iron Works,* 367 F.Supp. 817 (D.C.Iowa, 1973). Had the court in *Kimberly* relied on the rationale of the Fifth Circuit in *Holmes,* i. e., that the agency merely stands in the place of a private litigant, then the Sixth Circuit would have had to find that the doctrines of res judicata and collateral estoppel did limit the Commission's enforcement authority.

Because the Commission is a federal agency representing primarily the public interest when it sues to enforce Title VII rather than the interests of the private charging parties, the Commission is not and cannot be a member of a specific class of aggrieved persons.

Until recently, courts have not required the Commission to conform to the requirements of Rule 23. See, e. g., *EEOC v. Detroit Edison Co.,* 515 F.2d 301, 310, 312 (6th Cir. 1975); *EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086 (6th Cir. 1974); *Stuart v. Hewlett-Packard Co.,* 66 F.R.D. 73 (D.C.Mich.1974).

Courts that have considered the issue have ruled that Rule 23 was not applicable to suits brought by the Commission. *EEOC v Vinnell-Dravo-Lockheed-Mannix,* 417 F.Supp. 575 (D.C.Wash.1976); *EEOC. v. CTS of Asheville, Inc.,* (D.C.N.C.1976), 13 FEP Cases 852; *EEOC v. Rexene Polymers Co.,* (D.C.Tex.1975), 10 FEP Cases 61 (where employers' argument that because the Commission was not a member of the class it sought to represent, it could not meet the prerequisites of Rule 23(c) was dismissed as "an academically interesting class action question" inapplicable to suits filed by the Commission); *EEOC v. Lutheran Hospital,* (D.C.Mo.1974), 10 FEP Cases 1177; *EEOC v. Mobil Oil Corp.,* 362 F.Supp. 786 (D.C.Mo.1973) (where employer was not entitled to an order prohibiting the Commission from determining the size of its class by communicating with present and former employees).

The Fifth Circuit is the only circuit court that has ruled on the issue of the applicability of Rule 23 to suits brought by the Commission. The court in *Holmes* supports its ruling by relying on *EEOC v. Continental Oil Co.,* 548 F.2d 884 (10th Cir. 1977), aff'g on other grounds, 13 FEP Cases 785. But the issue in *Continental Oil* was whether the Commission was authorized to file a civil action where the charging parties had already filed a broad suit. And the holding of the Tenth Court, denying the Commission the authority to maintain a separate lawsuit where a private suit against the same defendant was already pending, is in direct opposition to the position of Sixth Circuit's in *Kimberly, supra.*

The lower court in *Continental* held that the Commission either had to certify its actions under Rule 23 or bring its actions under Section 707 of Title VII, 42 U.S.C. § 2000e–6. While the Tenth Circuit did not address this unusual distinction, it is best to do so here, because of the inherent fallacy of such a distinction and also because there is a suggestion that the Fifth Circuit's holding in *Holmes,* to some extent, is based upon that distinction. *Holmes, supra,* at 382, fn. 8.

Both the lower court in *Continental Oil* and the Fifth Circuit in *Holmes* recognized that suits brought under Section 707 of the Act may be maintained as class actions without requiring certification under Rule 23. Although the Fifth Circuit noted that the Act did not specifically exempt Section 706 actions from the requirements of Rule 23, the court failed to note that there is no such specific exemption for class actions brought under Section 707 either. While

actions brought under Section 707 are clearly appropriate exceptions to Rule 23, a large portion of cases brought under Section 706 are by their nature class actions. *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1201 (7th Cir. 1971); *Jenkins v. United Gas Corp.*, 400 F.2d 28, 33 (5th Cir. 1968).

The Fifth Circuit quotes Senator Javits' remarks made in a floor debate on the subject of the transfer of Section 707 litigation authority from the Attorney General to the Commission, and uses Javits' remarks to conclude that Section 706 suits are subject to Rule 23. *Holmes* at 384, fn. 11. However, these remarks by Javits were made for the purpose of showing that the type of suit which may be brought under Section 707 is virtually the same as that brought under Section 706 of the Act. Javits argued that Section 707 litigation authority, along with Section 706 litigation authority, should be consolidated in one agency.

In making his argument, Senator Javits illustrated the breadth of the Commission's enforcement powers by comparing a Commission suit to a class action. He stated:

"[T]he Commission can only proceed by suit. And if it proceeds by suit, then it can proceed by class suit. If it proceeds by class suit, it is in the position of doing exactly what the Department of Justice does in pattern and practice suits."
118 Cong.Rec. 4082 (1972).

Senator Williams, a sponsor of the 1972 Amendments to Title VII, also noted that there would be:

"[N]o difference between the cases that the Attorney General can bring under Section 707 as a 'pattern and practice' charge and those which the Commission will be able to bring as a result of yesterday's decision to give EEOC court enforcement powers. Frankly, the pattern and practice section becomes a redundancy in the law."
118 Cong.Rec. 4081 (1972).

While Sections 706 and 707 are not identical, they do have many similarities. The 1972 amendments to Title VII transferred Section 707 litigation authority from the Attorney General to the Commission, while, at the same time, subjecting Section 707 suits to the same procedural requirements as Section 706 suits. See Section 707(c) and (e), 42 U.S.C. § 2000e–6(c) and (e). Thus, the Commission's litigation authority under either Section 706 or Section 707 is initiated by the filing of a charge and both Section 706 and Section 707 suits must now be preceded by investigation, a reasonable cause determination and conciliation.[1] Suits brought under either of these two statutory sections seek to vindicate the public interest in essentially the same manner. Therefore, to distinguish between Commission suits brought under Section 706 and Section 707 in deciding whether Rule 23 applies, as did the district court in *Continental Oil* and the Fifth Circuit in *Holmes,* is both erroneous and unwarranted.

The court in *Holmes* also supported its holding as to the applicability of Rule 23 to Commission actions on a broad interpretation of the language "members of the class" used in that Rule. The Fifth Circuit in fn. 15, citing *Smith v. Board of Education,* 365 F.2d 770, 777 (8th Cir. 1966) and *Norwalk Core v. Norwalk Development Agency,* 395 F.2d 920, 937 (2nd Cir. 1968), noted that:

"The membership language of Rule 23 seems to be directed at individuals. It has, however, been applied to organizations and certain organizations have [even] been permitted to bring class actions even though not themselves members of a class."

By analogy, the Fifth Circuit then concluded that the Commission has standing to sue, is a real party in interest and so, for purposes of Rule 23, is a member of the class.

The Commission respectfully suggests that this reasoning of the Fifth Circuit in expanding the membership language of Rule 23 so as to include the Commission is faulty. Moreover, the two cases, *Norwalk*

---

1. Section 707(b) 42 U.S.C. § 2000e–6(b), provides that the government may request that a three judge court be convened to hear a pattern and practice case while Section 706 has no such provision.

and *Smith,* on which the Fifth Circuit bases its holding do not support such an expansive interpretation of Rule 23.

The *Norwalk* and *Smith* cases involved only the issue of standing. In *Norwalk,* the Norwalk, Connecticut, chapter of the Congress of Racial Equality, two non-profit tenants' associations comprised of low-income Negroes and Puerto Ricans, and eight individuals representing low-income Negroes and Puerto Ricans, all sought to bring a combined class action on behalf of themselves and other persons subjected to displacement from an urban renewal project. The complaint named, as defendants, *inter alia,* the Norwalk Housing Authority, the City of Norwalk and U.S. Department of Housing and Urban Development. Plaintiffs' statutory claim was that the named federal and local defendants had violated Section 105(c) of the Housing and Urban Development Act, 42 U.S.C. § 1455(c) (Supp.1967), which required that the Department of Housing and Urban Development provide for the proper relocation of families displaced by urban renewal. The district court had dismissed the complaint upon the ground that the plaintiffs had no standing to challenge the official conduct in question. As the Second Circuit noted, however, the basic issue in *Norwalk* was not really whether displaced families, like plaintiffs, had the required personal stake in the outcome of the litigation, but whether the actions taken by HUD and local public agencies under Section 105(c) were ever to be subject to judicial review of any type.

Finding that Congress never intended to insulate the area of urban renewal planning under the Housing and Development Act from judicial scrutiny, the Second Circuit then remanded to the district court the issue of whether, as matter of law, the named plaintiffs had suffered sufficient economic injury from defendants' relocation provisions to invoke the statute. Standing was to be granted if the district court determined upon remand that there was a compelling need to do so in order that the constitutional rights of those persons before the court might be vindicated. *Norwalk, supra,* at 937. Consequently, the issue in

*Norwalk* was whether plaintiffs would be permitted to attack the adequacy of governmental efforts taken under mandate of a federal statute. In the instant action, the issue is not whether the Commission is permitted to file suit on behalf of the public, but whether, in seeking relief for a group of aggrieved employees, the Commission must comply with Rule 23.

The *Smith* case, cited by the Fifth Circuit in *Holmes, supra,* also dealt with the issue of standing, rather than with the issue in the instant case, that of class membership under Rule 23. In *Smith,* an association of black school teachers initiated a legal action against the Arkansas school board challenging as unconstitutional their termination caused by the board closing of an all-black school pursuant to a desegregation plan. The Eighth Circuit found the existence of a compelling need to protect private legal rights referred to in *Norwalk.* The teachers' association was granted standing as a real party in interest under Rule 17(c).

A recent Seventh Circuit case, *Local 194, Retail Wholesale and Department Store Union v. Standard Brands, Inc.,* 540 F.2d 864 (7th Cir. 1976) deals essentially with the issue of class membership concerning the court in the instant action. In *Local 194,* the court held that a labor union as a representative for its employee members not only had standing to sue on their behalf under Title VII, but also did not have to seek class certification under Rule 23.

"In the nature of things, an organization suing solely as a representative of one or more of its members would be unable to meet all the requirements of Rule 23, if those requirements were read literally. It is not a member of the class . . . and, inasmuch as it can even sue on behalf of a single member . . . the standard of numerosity, Rule 23(a)(1), is not apt." *Local 194* at 867.

If an organization formed for the express purpose of asserting the private interests of a particular group cannot be considered a part of that class, it is difficult to see how the Commission can be considered a mem-

ber of all of the many classes and subclasses which it seeks to represent.

In *EEOC v. Lutheran Hospital, supra* (E.D.Mo.1974), the court held:

"A further contention of the hospital is that this is actually a class action and that all of the requirements of Rule 23 must be met. We do not agree. The suit is filed on behalf of the public interest for the elimination of allegedly unlawful employment practices, so that any relief which this Court might find appropriate to be given to various affected individuals in the event Plaintiff prevails would be merely incidental to the vindication of the public right." 11 FEP Cases at 1178.

If the Commission, when seeking relief on behalf of aggrieved employees, were required to certify its class under Rule 23, procedural complications would arise to hamper seriously the ability of the Commission to enforce the Act as well as the ability of individual discriminatees to recover for the damage done to them.

As noted by the Seventh Circuit in *Local 194, supra*, the standard of numerosity is not an apt one in a case brought by an organization that is not suing on its own behalf. The Commission asserts that this same rationale also applies to a Title VII suit brought by the Commission. The class of aggrieved persons on whose behalf an organization sues can consist of one or many employees. Likewise, in an action brought by the Commission, the class of aggrieved persons may consist of one charging party or many discriminatees. Nevertheless, even when the agency sues only on behalf of one person, a Title VII action remains, by definition, in the nature of a class action, because discrimination by race, sex, religion, or national origin is inherently class based. *Sprogis v. United Airlines, Inc., supra; Jenkins v. United Gas Corporation, supra.*

However, if the Rule 23 numerosity requirement were applied to Commission actions, in cases where the class of aggrieved employees is too small for that requirement

to be met, those discriminatees would as a practical matter often be left without legal recourse. Because the Commission would be precluded from representing them, these discriminatees could join the Commission's suit only if they retained private counsel. While the Act provides for the appointment of attorneys[2] at the court's discretion, it is unclear whether this provision extends beyond private parties who bring their own separate Title VII suits. If the provision does indeed extend to cases where discriminatees seek joinder in a suit already brought by the Commission, the cost of court-appointed private counsel for each individual discriminatee seeking joinder will be great. If an employee seeking joinder in a Commission suit is unable to convince a court that he satisfies the criteria for court-appointed counsel, relief for that employee may be effectively foreclosed. In many cases, the back pay award due that aggrieved employee will be too small to warrant retaining private counsel. Also, if the Commission were required to comply with Rule 23, voluntary settlement of Title VII actions between the Commission and a defendant would be hindered. As was stated previously in this memorandum, the Commission is in a different position from that of the individual employee for whom the agency seeks relief. Consequently, the Commission sometimes weighs factors in a proposed settlement differently from individual class members: such factors might include an agreement to implement long-range affirmative action goals in hiring, training or recruitment. To the extent that these factors do not encompass the specific relief to which various individual employees believe they are entitled, settlement might be foreclosed. Considerable time and expense would thus be created in situations where the Commission would have to proceed to trial in cases in which it would not otherwise do so. Or, in the alternative, the Commission would be forced into the untenable position of first having convinced the court that it is a class member and an adequate class representative, then settling

2. Section 706(f)(1), 42 U.S.C. § 2000e–5.

a case upon terms which, although entirely in keeping with the agency's responsibility to the public interest, may not be adequate in the view of the class members. *McClain v. Wagner Electric Co., supra,* at 1121.

The facts present in *Holmes, supra,* are not at all analogous to those in this case. In *Holmes,* two women alleged that they had been discharged for complaining about the sexual advances of a male supervisor. A third charge was subsequently filed by a man who said that he had been discharged for refusing to cooperate in the company's defense of the supervisor. Two other charges of sex discrimination, apparently unrelated to the previous charges of sexual harassment, were later filed separately with the Commission over a two-year period. In its complaint, the Commission alleged broad general violations of Sections 703 and 704 of Title VII, seeking monetary and injunctive relief for "all those affected" but without indicating what the parameters of that class might be. In addition, the initial complaint was later amended to include all of the Defendant's nine stores rather than just the one that had been named in the charges and sued initially. The Fifth Circuit observed:

"Holmes, for its part, does not know against whom and upon what grounds precisely it must defend; and this a hear and a half after EEOC filed its . . . complaint." 15 FEP Cases at 385.

In the instant case, Whirlpool has known against whom and upon what grounds it would be required to defend itself, since at least the day the complaint in this action was filed, if not earlier. Nanie Smith filed her charge against Whirlpool (LaPorte Division) on October 4, 1968, alleging: that Whirlpool had not promoted her to the position of Stockman because of her sex; that the position of Stockman is filled only by men. Whirlpool, in turn, admits having received notice of Smith's charge as early as March 27, 1969. Whirlpool also admits having received a copy of the Letter of Determination on Smith's charge shortly after said letter was issued by the Commission on February 7, 1974. The determination found

reasonable cause to believe Smith's allegations were true and invited Whirlpool to conciliate the issues raised by Smith in her charge.

Carol Pinkerton filed her charge against Whirlpool (LaPorte Division) on April 23, 1973, alleging, *inter alia,* that she was terminated by Whirlpool because of her sex; that as the first female in a stockman position, she was judged by different standards from those applied to males who performed the same job. Whirlpool admits having received notice of Pinkerton's charge on April 24, 1973. Whirlpool also admits having received a copy of the Letter of Determination on Pinkerton's charge shortly after said letter was issued by the Commission on July 26, 1974. The determination found reasonable cause to believe Pinkerton's allegations against Whirlpool were true and invited Whirlpool to conciliate the issues raised by Pinkerton in her charge. [The charges filed by Smith and Pinkerton and the Commission's determinations on the said charges have already been made part of the record.]

After conciliation efforts on both the Smith and Pinkerton charges failed, the Commission still attempted to resolve the two charges and avoid litigation by initiating a procedure known as "Pre-Suit." [See Commission Memorandum in Support of Its Motion in Opposition to Defendant Whirlpool's Motion to Dismiss or In the Alternative to Strike, at p. 22.] When pre-suit procedures also proved unsuccessful, the Commission, on June 3, 1976, filed the instant action.

The Fifth Circuit in *Holmes* required the Commission to comply with Rule 23, because the defendant in that case had no notice as to the nature and limits of the action initiated against it by the Commission. The Fifth Circuit was concerned about providing sufficient safeguards to enable the defendant to protect its legal interests adequately. In the instant action, however, Whirlpool has known on what grounds it must defend itself and is able to defend its position adequately. Whirlpool's interests are fairly and adequately protected without the imposition of Rule 23 require-

ments or the Commission. Consequently, the Commission submits that the *Holmes* decision should not be applied to the facts in the *instant* action.

Whirlpool argues that Commission compliance with Rule 23 must be an absolute prerequisite to the instant action in order to protect Whirlpool from multiple liability: all class actions have a binding effect on the members of the class, excepting those who opt out of a Rule 23(b)(3) class. However, where the Commission brings suit under Section 706, as in the instant action, private parties will generally be bound by the outcome anyway.[3] Commission defendants are protected from multiple liability without the imposition of Rule 23. Such protection is afforded for two reasons. First, no person may bring an action under Title VII, unless that person has filed a charge with the Commission within 180 days of the alleged act of discrimination. Second, where the Commission has already filed suit, a private party will rarely be able to file a separate lawsuit and will be limited only to intervention, except in the unlikely situation where the scope of the Commission suit is narrower than that of the private party. Moreover, as a practical matter, private parties rarely file suit where the Commission already has a suit pending. And the receipt of a back pay award in settlement is usually conditioned upon a waiver of the individual's personal cause of action.

██ The Commission is not and cannot be a member of a class of aggrieved persons. The Commission has interests which often conflict with those of aggrieved individuals. Therefore, to require the Commission to proceed under Rule 23 would only present unnecessary and complicated procedural problems making Title VII suits more time-consuming and burdensome.

Whirlpool argues that the lack of Rule 23 safeguards would turn this action into the nightmare that the Fifth Circuit foresaw in *Holmes.* However, such a prediction is particularly puzzling, when given the fact that

the Commission has filed lawsuits and obtained general and specific relief for large numbers of employees ever since the agency was given enforcement powers in 1972. Compliance with Rule 23 is not a prerequisite to the instant action, as Whirlpool has already been afforded the protection necessary to prepare its defense adequately.

Whirlpool knows the parameters of this action. Whirlpool was properly notified by the Commission of the two charges filed by Pinkerton and Smith, and so was put on notice not to destroy any existing records relevant to the charges, as well as to keep any relevant new company records until the final disposition of those charges. (See Plaintiff's Memorandum in Support of Its Motion In Opposition to Whirlpool's Motion to Dismiss, or In the Alternative to Strike, at p. 27.)

██ If Whirlpool's primary concern is a fear of multiple liability and concomitant recoveries, that fear is groundless. Because back pay is a form of restitution,[4] any award that an individual receives as a result of a Commission suit would be set off against the amount he would receive in a subsequent proceeding. See *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, fn. 14, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *United States v. Allegheny-Ludlum Industries,* 517 F.2d at 857; *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 715 (7th Cir., 1969). Moreover, where a case is settled by the parties prior to trial, the receipt of an award of back pay may appropriately be conditioned on the waiver of an individual's personal cause of action. *Allegheny-Ludlum, supra,* at 853–862. Such a provision may be embodied in a judicial decree as well.

Based on the foregoing, Whirlpool's Motion under Rule 23 is DENIED.

---

3. For this reason, an aggrieved party may intervene as of right in a Commission action.

4. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421–425, 95 S.Ct. 2362, 45 L.Ed.2d 280.