EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiffs,

v.

STROH BREWERY COMPANY, Brewery
Workers' Union, Local 181 and Brewery
Workers' Union, Local 1038, Defendants.

Civ. A. No. 8–72504.

United States District Court,
E. D. Michigan, S. D.

April 24, 1979.

Martin A. Scott, Detroit, Mich., Bruce B. Elfvin, Richard Sutter, Rosemary Rodriguez, Chicago, Ill., for plaintiff.

Wm. M. Saxton, Virginia F. Metz, of Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant Stroh.

MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT STROH BREWERY COMPANY'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR A MORE DEFINITE STATEMENT

JULIAN ABELE COOK, Jr., District Judge.

This case is before the Court on a Motion to Dismiss made by Defendant Stroh's Brewery. In Paragraph One of the Complaint, the Plaintiff Equal Opportunity Commission (EEOC) states that the action is "instituted pursuant to Section 706(f)(1), (3) & (g) and Section 707 of Title VII of the Civil Rights Act of 1964, as amended." Again, in Paragraph Three, the Complaint states, the "Equal Employment Opportunity Commission . . . is expressly authorized to bring this action by Sections 706(f)(1) and 6." Paragraph Seven reads in pertinent part, "charges were filed with the Equal Employment Opportunity Commission alleging violations of Title VII pursuant to Sections 706 and 707 42 U.S.C. Sections 2000e–5 and 6 [2000e–6], by Defendant Company." In Paragraph Eight, the paragraph alleging more specific acts of violation of Title VII, it is alleged, "Defendant Company had intentionally engaged in unlawful employment practices in violation of Sections 703(a) and (c) and 707(a) Title VII, 42 U.S.C. Sections 2000e–2(a) and (c) and 6(a) [2000e–6(a)]."

It would appear from the first three of four paragraphs listed above that the Equal Employment Opportunity Commission is bringing this lawsuit pursuant to two Sections, 706(f)(1) and 707. However, Paragraph Eight may give rise to some ambiguity regarding this conclusion. Moreover, the Plaintiff's response to the Motion to Dismiss discusses § 707 in great detail, while it mentions § 706 only when it is necessary or appropriate in discussing § 707. We believe, therefore, that the Complaint attempts to state claims pursuant to both sections or is ambiguous enough to require that we treat the Complaint as dealing with both sections in order to dispose of the Motion.

The primary issue presented is whether the EEOC must comply with Fed.R.Civ.P. 23 if it seeks relief to compensate a class of persons. As the Motion indicates, "the EEOC has failed to comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure, even though it is seeking to represent a class of blacks and females." Defendant's Brief at 2. Before going on,

we point out that Stroh's, in its Brief, seems to characterize the Complaint as being a pattern and practice suit. However, it also states that this is a pattern and practice suit brought by the EEOC pursuant to Sections 706 and 707.

The Complaint asks for various forms of relief: (1) that we permanently enjoin any employment practice or pattern which discriminates because of race, color, or sex; (2) Order Defendant Stroh's Brewery Company to institute affirmative action programs which provide equal employment opportunities for blacks and women and eradicates past practices' effects; (3) "Order Defendant to make whole those persons adversely affected by the unlawful employment practices described here." It is this third type of relief that the Defendant Stroh Brewery Company believes to have class action characteristics.

Therefore, there seem to be two questions before us regarding these matters: (1) Does the EEOC have to comply with Fed.R.Civ.P. 23 if it is suing pursuant to § 707 of Title VII, 42 U.S.C. § 2000e–6 (1975) and (2) Does the EEOC have to comply with Fed.R.Civ.P. 23 if it is suing pursuant to § 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1) (1975)?

There appears to be no case law dealing with the issue of the EEOC being required to comply with Rule 23 in § 707 cases. On the other hand, there is authority dealing with the issue as to § 706(f)(1) lawsuits. However, only one case dealing with that issue has reached a Circuit Court of Appeals. In *EEOC v. D. H. Holmes Co.*, 556 F.2d 787 (5th Cir. 1977), the Court faced what it termed a question of first impression in the Circuits. Both Briefs for the parties cite several case authorities regarding the applicability of Rule 23 to § 707 or § 706(f)(1) claims.

We think, however, both issues, and especially the § 706(f)(1) issue, turn upon how we treat the reasoning of the Fifth Circuit in *Holmes*. Some of the more recent cases dealing with the § 706 issue have rejected the *Holmes* reasoning. *EEOC v. Singer*

*Controls Co.*, 80 F.R.D. 76, 78 (N.D.Ohio 1978). *See also EEOC v. Whirlpool Corp.*, 80 F.R.D. 10 (N.D.Ind.1978). Additionally, a law review article criticizing the *Holmes* decision is helpful for this analysis. P. Reiter, *The Applicability of Rule 23 to EEOC Suits: An Examination of EEOC v. D. H. Holmes*, 28 *Syracuse L. Rev.* 741 (1978).[1]

## I.

### THE HOLMES CASE

Because the first case to systematically attack the problem of the EEOC and class action status was *Holmes*, it seems worth discussing in some detail. Many of the facts regarding the Complaint of *Holmes* are mirrored in our own case.

The EEOC, which filed a Complaint pursuant to § 706(f)(1) on the basis of alleged sex discrimination sought (1) injunctive relief, (2) an Order compelling affirmative action, and (3) an award of back pay to "those persons adversely affected." (It is important to note that § 707 was not involved in the *Holmes* complaint). After individual complaints had been filed with the EEOC (some of which later evolved into lawsuits), the EEOC instituted the subject action against *Holmes*. In view of the Complainants effort to recover back wages, the Defendant moved the District Court to require compliance by the EEOC with Fed. R.Civ.P. 23. The District Court granted their Motion. The EEOC then took an Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b) (1975).

The Circuit Court felt that the initial question was one of characterization. To wit, was the EEOC bringing a class action? The Court concluded the EEOC was prosecuting a class action for the following reasons: (1) The Complaint was broad and vague. The Court reasoned that the Complaint was drawn so as to include the widest possible class of female employees; (2) There was a specific prayer for back pay for "all those persons adversely affected" by the alleged discriminatory conduct; (3) The Complaint was so broadly drawn that it

---

1. [hereinafter Reiter]

named no specific employees as being adversely affected; (4) The nature of discovery disclosed that the EEOC was acting on behalf of a class.

After resolving this question of characterization, the Court went on to ponder whether this class action under § 706(f)(1) had to comport with Rule 23. The EEOC argued that Rule 23 should not apply, and that if the Rule was applicable, the EEOC could never comply because it was neither a class member nor could it ever be a proper representative. The Court, in rejecting both of these arguments, based its conclusions upon (a) the construction of § 706, Rule 1, and Rule 23 (b) the legislative history of the 1972 Amendments to § 706, and, (c) the policy considerations related to protecting defendants in complex litigation.

The Court pointed out that the 1972 Amendments to § 706 give the EEOC the same standing to sue in its own name as individuals privately aggrieved. The Court also indicated that the ability of EEOC to address discrimination without being subject to Rule 23 was not expressly mentioned in § 706; (to wit, there was no explicit exemption). Although the Court appeared to recognize that (a) the Congress intended the 1972 Amendments to increase the enforcement powers of the EEOC, and (b) the exclusion from Rule 23 would provide the EEOC with an important enforcement tool, it determined that an exception from the Rules would, of necessity, have to be expressly authorized by the Congress. In support of this, the Court cited Fed.R.Civ.P. 1 stating "These rules govern . . . all suits of a civil nature . . . at law or in equity . . . "; the only exemptions from the Rules being contained in Fed.R. Civ.P. 81 (dealing with the NLRB). Only the Congress or the Supreme Court is expressly authorized to include EEOC in the exceptions. 28 U.S.C. § 2072 (1975). The Court pointed out that neither body had exercised their statutory prerogative to exempt the EEOC from the reach of Rule 23.

The Court went on to state that the legislative history of § 706 supports the notion that the EEOC must comply with Rule 23. The Court cited Senator Javits in debate regarding the Amendments:

These are essentially class actions and if [EEOC] can sue for an individual claimant, then they can sue for a group of claimants. It seems to me that this is provided for by the rules of civil procedures in the Federal courts. . . . I have referred to the rules of civil procedure. I now refer specifically to rule 23 of those rules, which is entitled "Class Actions" and which give the opportunity to engage in the Federal court in class actions by properly suing parties. We ourselves have given permission to the EEOC to be a properly suing party. 118 Cong.Rec. 4081–82 (1972) reprinted in Sen. Comm. on Labor and Public Welfare, 92nd Cong., 2nd Sess., Legislative History of the [EEOC] Act of 1972, at 1589–90 (1972). (Hereinafter "Legislative history").[2]

The Court then commented:

"Senator Javits' comments were made in debate concerning amended § 707 pattern and practice suits. Though § 707 is not at issue now, clearly his remarks apply with equal force to § 706 suits."[3]

The Court noted that § 706 suits were often Class Actions, and that the 1972 Amendments, by granting the EEOC standing to sue, should not be interpreted as interfering with the procedural rules governing such lawsuits. Further, the Court reasoned that the managers of the Bill were aware that Title VII litigation under § 706 frequently takes the form of class actions and, accordingly, they sought to make certain that the procedural rules governing them would not be disturbed by extending authority to the EEOC to bring such actions. Senator Williams, Committee Chairman and floor manager of the Bill, stated in a section-by-section analysis:

"In establishing the enforcement provisions under this subsection and subsection

**2.** *EEOC v. D. H. Holmes Co.,* 556 F.2d at 794 n. 11.

**3.** *Id.* at 794.

706(f) generally, it is not intended that any of the provisions contained therein are designed to affect the present use of class action lawsuits under Title VII in conjunction with Rule 23 of the Federal Rules of Civil Procedure . . . [T]he leading cases in this area to date have recognized that Title VII claims are necessarily class action complaints . . ." Legislative History, 1773. *See also Id.* at 1847.[4]

It has been persuasively argued that the legislative history of the 1972 Amendments is not as cogent as the *Holmes* Court would have it. In fact, it has been asserted, the history is at best ambiguous.[5] The author of a Syracuse Law Review Article advances the notion that, when Senators Javits and Williams made the comments as noted by the *Holmes* Court, they were neither addressing, nor even considering the problem raised in *Holmes*.[6]

In response to the argument that the EEOC could never be a representative because it never could be a member of the class of aggrieved persons, the *Holmes* Court opined that after Congress had given the EEOC standing to sue, it would be anomalous to hold that EEOC was not or could not be a member of the class. Additionally, the Court said that the EEOC was probably a class representative *par excellence* because of its resources, experience, and tenacity.[7] These determinations have been the subject of criticism as being conclusionary.[8]

Finally, the *Holmes* Court cited several policy reasons for not exempting the EEOC from the reach of Rule 23.[9] The most compelling policy argument advanced by the *Holmes* Court is that if Rule 23 is not applicable then the Defendant would not be afforded protection against inconsistent adjudication or would be subject to piecemeal suits. In short, without Rule 23, there is no way to prevent possible subsequent suits by individual private parties.

By way of rebuttal, it has been said "[t]o the extent that the Court's opinion in *Holmes* reflects an underlying policy deter-

---

4. *Id.*

5. Reiter, 28 *Syracuse L.Rev.* at 752–54.

6. The author argues that the Court's citation of Senator Javit's comments were taken out of context and added the following editorialization:

> His [Javits'] comments were not made for the purpose of showing that the Commission is bound to follow Rule 23 whenever it sues on behalf of a group of persons, but instead were made to show the breadth of a suit which may be brought either under § 706 or § 707. Senator Javits concluded that the two sections were virtually the same and, thus, he argued that § 707 litigation authority, as well as power to bring suits under § 706, should be placed in one agency. Senator Javits also stated during the same debate:

>> A pattern or practice suit is, after all, nothing but a broader version involving more parties in greater depth in terms of length of time and the prevalence of a given practice than an individual suit. It simply is a raising to another degree, another order of magnitude of the individual suit and, hence, it affects many more people and requires a degree of attention which celebrated cases in any field should have.

> 118 Cong.Record 40 (1972). It can be argued that this remark goes against the Courts interpretation of legislative history, for if a pattern

and practice suit is "nothing but a broader version . . . of an individual suit" then rule 23 need not apply.
*Id.* at 753 n. 72.

> As to the remarks of Senator Williams regarding § 706(f) not affecting class action lawsuits under Title VII, the Article makes the following argument:

>> While it is true that the 1972 amendments did not attempt to change existing class action procedures or pre-amendment case law, the court failed to recognize the significant fact that existing law applied only to private parties, since prior to the enactment of the 1972 amendments the Commission lacked the legislative authority to initiate suit. Thus, it is likely that statements in the legislative history indicating that the 1972 amendments were not intended to change "the present use of class action lawsuits under Title VII in conjunction with Rule 23 of the Federal Rules of Civil Procedure" meant only that the amendments were not intended to alter the use of class actions by *private* persons.

> *Id.* at 754.

7. *EEOC v. D. H. Holmes,* 556 F.2d at 796–97.

8. *EEOC v. Akron Nat'l Bank & Trust Co.,* 78 F.R.D. 684, 687–88 (N.D.Ohio 1978).

9. *EEOC v. D. H. Holmes,* 556 F.2d at 795–96.

mination that a Commission suit on behalf of a group of persons should necessarily be binding on private parties, it is in fundamental conflict with other cases which have held that suits by the government do not bind private litigants." [10] The cases cited for this proposition are ones not involving the EEOC, but rather other governmental agencies (e. g., government prosecuting anti-trust action does not preclude subsequent private suit.) [11]

The Moving Defendant in the instant case, in making the same policy argument, relies upon *McClain v. Wagner Elec. Corp.,* 550 F.2d 1115, 1119 (8th Cir. 1977). The Court, in *McClain,* did not permit a private litigant to bring a subsequent suit after the Commission had sued; however, it did allow the private litigant to intervene in the Commission suit. In dicta, the *McClain* Court said, "[i]f a private suit by an employee or employees is instituted prior to the filing of a suit by the Commission, the Commission's remedy is limited to permissive intervention under rule Rule 24(b) in the imployees' suit, at least where the claims asserted by the Commission are no broader than those set out in the employees' suit." *Id.* at 1119 & n. 3. The *McClain* Court in Footnote 3 pointed out that this result has not been followed when the claims of the Commission have been seen as broader than those filed by the private litigants, citing two leading Sixth Circuit cases. *EEOC v. McLean Trucking Co.,* 525 F.2d 1007, 1010 (6th Cir. 1975); *EEOC v. Kimberly Clark Corp.,* 511 F.2d 1352, 1361 (6th Cir. 1975).

*McClain* may be read as attempting to distinguish these Sixth Circuit cases on the basis that, in certain instances, the EEOC

suit may be broader than the private suit(s). However, the reading by this Court of the Sixth Circuit cases is not in accord with that understanding. It seems clear, that *whenever* the EEOC sues under § 706, in this Circuit, the suit is broader than a private suit because the EEOC is trying to vindicate the interest of the public. These Sixth Circuit cases, therefore, seemingly indicate a disinclination of our Court of Appeals to view the EEOC as acting for a class or aggregation of private and individual claims when it sues under § 706.

Although *Holmes* could be rejected outright by adopting one or all of the arguments given above to rebut the basic tenants of its rationale, this Court believes that such an approach would be oversimplistic. Ambiguity in the post-amendment statutory scheme causes us to be more circumspect. The *Holmes* approach does have some merit because it clearly delineates the boundary between § 706 and § 707 and delegates to each of them very different functions.

## II.

## DISTINGUISHING §§ 706(f)(1) and 707

### A.

### § 707 Claims

*Holmes* and the law review article criticizing it are both focused upon the applicability of Rule 23 to § 706(f)(1) proceedings. It is believed that no Appellate or District Court has addressed the applicability of Rule 23 to § 707 actions. The Movant attempts to establish the proposition that § 707 and § 706(f)(1) are identical, or so similar as to be identical. As a consequence, it is argued that the EEOC, under

10. Reiter, 28 *Syracuse L.Rev.* at 757.

11. *See, e. g., Battle v. Liberty Nat'l Life Ins. Co.,* 493 F.2d 39, 52–53 (5th Cir. 1974), *cert. denied,* 419 U.S. 1110, 95 S.Ct. 784, 42 L.Ed.2d 807 (1974) (a government antitrust action does not preclude subsequent private suits); *Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201 (2nd Cir. 1972), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973) (private parties not bound by the Attorney General's prior Title VII action); *Crawford Prod. Co. v. Bearden,* 272 F.2d 100, 105 (10th Cir. 1959) (an action by the Secretary of Labor under the Fair

Labor Standards Act of 1938 does not foreclose subsequent private suits). In *Williamson* the court did suggest, however, that if the government had sought the specific relief asked by the plaintiffs, the earlier decision might have been binding by way of *stare decisis. Williamson v. Bethlehem Steel Corp.,* 468 F.2d at 1203–04. *Contra, EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453, 456 (5th Cir. 1975) (holding, without analysis, that *res judicata* bars the EEOC from relitigating issues on behalf of a claimant whose suit has already been adjudicated).

the *Holmes* rationale, should be required to comply with Rule 23 in the event that relief is sought pursuant to § 707 (because it must comply with that Rule if it acts pursuant to § 706(f) (1)). This is a novel and curious argument, especially if we compare it to the reasoning of two recent District Court cases. In both *EEOC v. Whirlpool Corp.*, 80 F.R.D. 10, 16–17 (N.D.Ind.1978) and *EEOC v. Singers Control Co.*, 80 F.R.D. 76, 78 (N.D.Ohio 1978), the courts found that the *Holmes* reasoning was unacceptable. These cases and the Movant's position both begin with the idea that the two sections are redundant of one another, but arrive at opposite conclusions.

The Movant attempts to distinguish these cases and the *Holmes* Footnote 8 by arguing that Footnote 8 was not considered dicta. None of the Courts involved, so the argument goes, had to confront the precise issue relating to the applicability of Rule 23 to § 707 actions by the EEOC. The *Holmes* Footnote 8 reads as follows:

> [The text reads] When EEOC brings a class suit under § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1) it too must abide by appropriate Federal Rules of Civil Procedure, including Rule 23 . . .. The questions here before us on this interlocutory appeal are, therefore, very narrow ones which concern merely the procedural side of this case.[8]
>
> [The footnote reads] 8. Furthermore, we note emphatically that this is *not* a situation in which application of procedural rules will thwart any substantive right whatsoever.

*If* for any reason, EEOC is not certified below but still believes a pattern or practice of discrimination exists in the *Holmes* Company, its recourse is to file a suit under § 707 of the Civil Rights Act, 42 U.S.C. § 2000e–6. At the same time, EEOC might continue to seek relief for the five named individuals in the instant case under § 706, 42 U.S.C. § 2000e–5 upon dropping the class aspects of the suit.

§ 707 was amended in 1972. Prior to those Amendments, only the Attorney General could bring pattern and practice lawsuits and only under that section. The Amendments vested this authority in the EEOC—an authority which would become effective years subsequent to the passage of the Amendment. § 706(f)(1), as amended, gave the EEOC, for the first time, the power to bring actions for instances of individual discrimination. Prior to the Amendments, only a discriminatee could bring a lawsuit.

After the Amendments became effective, the EEOC could proceed under either § 706 or § 707. The existence of these dual avenues has caused some to conclude (including Senators Javits and Williams) that the post-Amendment § 707 is now a redundancy of § 706. *See generally* 118 Cong.Rec. 4081 (1972) (remarks of Sen. Williams); 118 Cong.Rec. 4081–82 (1972) (remarks of Sen. Javits). *See also United States v. Allegheny-Ludlum*, 517 F.2d 826 (5th Cir. 1975); *EEOC v. Whirlpool*, 80 F.R.D. at 17; *EEOC v. Singer*, 80 F.R.D. at 78.

If section § 706(f)(1) is seen as only putting the EEOC in the shoes of the discriminatees, without regard to their number, then it would appear that § 707 should not be treated as a dead letter and a redundancy. Some avenue of attacking discrimination in a broad, comprehensive way ought to exist. I think the *Holmes* case, and the cases upon which it relies (e. g., *McClain* and *Continental Oil* [*EEOC v. Continental Oil*, 548 F.2d 884 (10th Cir. 1977), aff'g D.C., 393 F.Supp. 167]) can be read as limiting the breadth of the EEOC's action under § 706(f)(1). At least, they have that practical result. The following quote from *Whirlpool* evidences this:

> In *Kimberly* [*EEOC v. Kimberly-Clark*, 511 F.2d 1352 (6th Cir. 1975)], the Commission had never agreed on the settlement reached between the party and the employer. So to vindicate the public interest, which is by definition broader than that of the charging party, the Commission filed its own action . . .
> Had the court in *Kimberly* relied on the rationale of the Fifth Circuit in *Holmes*, i. e., that the agency merely stands in the

place of a private litigant, then the Sixth Circuit would have had to find that the doctrines of *res judicata* and collateral estoppel did limit the Commission's enforcement authority. . . .

The court in *Holmes* supports its ruling by relying on *EEOC v. Continental Oil Co.,* . . . [b]ut the issue in *Continental Oil* was whether the Commission was authorized to file a civil action where the charging parties had already filed a broad suit. And the holding of the Tenth Circuit, denying the Commission the authority to maintain a separate lawsuit where a private suit against the same defendant was already pending, is in direct opposition to the position of Sixth Circuit's in *Kimberly, supra.*

*EEOC v. Whirlpool*, 80 F.R.D. at 16.

To the extent that *Holmes* and the other cases are read or utilized to limit the breadth of the EEOC's action under § 706(f)(1), the general purpose of the Congress to eliminate all vestiges of discrimination would not permit viewing § 707 as a mere redundancy. The Movant's argument regarding § 707 as being redundant of § 706(f)(1) appears to be a bootstrap method of applying *Holmes* to § 707 actions.

If it is determined (as the Court in *Holmes* said Congress had conclusively determined) that the EEOC is member of the class of the aggrieved discriminatees, then it necessarily follows that the *Holmes* Court must have viewed § 706(f)(1) as *not* granting to the EEOC a right to sue broader than the aggregate rights of the aggrieved parties. There is language that *Holmes* supports this limited and restrictive view of § 706(f)(1):

The original Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1970) created a private cause of action under § 706 which has been construed to give rise to class action lawsuits under Rule 23. . . .

Section 706, 42 U.S.C. § 2000e–5(f)(1) was accordingly widened to permit EEOC to sue in its own name for the *redress of individual injury.*

*EEOC v. D. H. Holmes*, 556 F.2d at 794 (emphasis added).

The Court went on to say:

The express statutory language certainly does not exempt EEOC from Rule 23, it merely authorizes EEOC to bring civil suits under § 706. It gives EEOC standing to sue under Title VII *to the same extent* as individuals aggrieved by discrimination in employment.

*Id.* (emphasis added).

Given this restrictive understanding of § 706(f)(1) as being a mere vesting in the EEOC standing to sue for individual grievances (an understanding which need not be adopted in order to rule on the § 707 question), then two things follow: (1) The *Holmes* court must have viewed § 707 as no mere redundancy but rather the section pursuant to which the EEOC could act if it wished to vindicate the public interest. This reading of *Holmes* is supported by reference to Footnote 8, wherein the Court indicates that if, for any reason, the EEOC can not comply with Rule 23, it may proceed under § 707 under a pattern of discriminatory practice theory; (2) The *Holmes* Court's Footnote 8 consideration of the application of Rule 23 to § 707 was not, as suggested by the Movant, cursory. In order to find that Rule 23 applied to § 706(f)(1) suits because they were derivative of individual private claims, it necessarily follows that the *Holmes* Court concluded that (a) pattern and practice suits could only be maintained under § 707, and (b) Rule 23 would be clearly inapplicable to § 707 suits because of the absence of any class interest to represent (there is only the interest of the public).

I think there is merit to the bifurcation that the *Holmes* analysis would seem to suggest. Demarcating when the EEOC is acting (a) on behalf of an aggregate of individual rights and (b) to vindicate the public interest by requiring it to act pursuant to one statutory section or the other would make for a clearer statutory scheme and for more meaningful precedents. Whether the EEOC should be required to comply with Rule 23 when acting under

§ 706, however, is a distinct question from the advisability or propriety of such demarcation.

Regrettably or not, our Circuit has decided that 706(f)(1) actions are not tantamount to the EEOC standing in the shoes of individual litigants. *EEOC v. McLean Trucking . Co.*, 525 F.2d at 1010–11; *EEOC v. Kimberly-Clark Corp.*, 511 F.2d at 1355–61. Because of this, it is unlikely that this Court could hold the EEOC to the requirements of Rule 23 when acting under § 706. An essential ingredient to the *Holmes* holding is a restrictive understanding of § 706(f)(1) that is conspicuously absent in our Circuit. This understanding of the law of our Circuit prompted one District Court to conclude that the EEOC could never, as a matter of law, become a member of a class of aggrieved persons.

> This Court simply cannot agree that Congress' provision of standing is equivalent with a Congressional determination that the EEOC does " 'possess the same interest and suffer the same injury.' " Congress provided the EEOC with standing to sue to protect the national policy of equal opportunity in employment." [3]
>
> [Footnote 3 reads] In *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1359 (6th Cir. 1975) the Sixth Circuit Court of Appeals stated:
>
> > [T]he eradication of discrimination by race and sex promotes public interests and transcends private interests. Each step along the road to equal employment opportunity takes us closer to the goal of a truly open society, confining individuals only within boundaries set by their own talents and determination. As we wrote in *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 358 (6th Cir. 1969), 'Title VII of the Civil Rights Act of 1964 should not be construed narrowly, and the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties.' Thus, the EEOC represents the public interest when it sues to enforce Title VII, not solely the interests of the private charging parties.

*EEOC v. Akron Nat'l Bank & Trust Co.*, 78 F.R.D. 684, 687 & n.3 (N.D.Ohio 1978).

■ Another argument advanced by the Movant for requiring the EEOC to comply with Rule 23 in a § 707 suit relates to the assessment of back pay damages in a pattern and practice suit. § 707 provides that the Attorney General could, and now the EEOC can, request "such relief, including an application for a permanent or temporary injunction, restraining order or other *order . . .* as he deems necessary to insure the full employment of the rights herein described" (emphasis added). Our Circuit has adopted the policy that "back pay" is a proper form of relief in a § 707 pattern and practice suit. *United States v. Masonry Contr. Ass'n of Memphis, Inc.*, 497 F.2d 871, 876 (6th Cir. 1974). The Court in *EEOC v. Akron Nat'l Bank & Trust Co.*, 78 F.R.D. at 689–90 rejected the notion that *Masonry Contr. Ass'n* was no longer viable precedent because the action was filed prior to the 1972 Amendments to § 707.

At oral argument, Defendant Stroh Brewery stressed the fact that the EEOC, when acting pursuant to § 707, need not comply with Rule 23 if it is merely seeking injunctive relief. It is argued that compliance with the Rule would be warranted only if the EEOC sought back pay relief for individual discriminatees. Only one inference can be drawn from such an argument—to wit, the EEOC, when acting pursuant to § 707, not only acts to vindicate the public interest but also, necessarily, acts to vindicate the private interests of discriminatees whenever it sues for back wages.

In support of this contention, the Defendant cites language from *United States v. Georgia Power Co.*, 474 F.2d 906, 923 (5th Cir. 1973). In that case, the Court rejected the notion that the state statute of limitations was inapplicable merely because the Attorney General was bringing the § 707 action for back wages:

> Where the government is suing to enforce rights belonging to it, state statute of limitation are not applicable. [citations omitted] However, this principle is not apropos to the present back pay

claims. Insofar as the pattern or practice suit constitutes a proper legal conduit for the recovery of sums due individual citizens rather than the treasury, it is a private and not a public action. [citations omitted] These personal claims are entitled to no superior status because they are here allowed to be asserted in the Attorney General's suit as well as in the private class action.

We think this understanding of the EEOC as wearing two hats at once (i. e., representing the interests of the public and the private discriminatees simultaneously) is incorrect. Also, to the extent the *Georgia Power Co.* dicta recognizes the same, this Court respectfully rejects that concept.

The EEOC may well determine that the best means of securing the elimination of a pattern and practice is to (a) sue for the back wages of only a select number of individuals, or it may determine that it wishes to (b) settle, or attempt to settle, wage portion of the Complaint or (c) amend the Complaint to delete that theory altogether. For example, at the beginning of the lawsuit, it might appear that the pattern and practice of discrimination could best be eliminated by the EEOC seeking back wages. However, later in the lawsuit, it might be determined by EEOC that the back pay portion of the Complaint was easily expendable in light of settlement negotiations. In fact, it could be that, in light of discovery, retaining back wage claims (for example, claims that were discovered to have no real substantive foundation) might prove a serious impediment to the EEOC eradicating an aggrieved pattern and practice of discrimination by settlement or otherwise.

These concerns indicate that the interest of the EEOC in a pattern and practice suit are often very different than the interest of the individual discriminatees in obtaining back wages. At any given time, the interest of the public could diverge from the individual interests. If the EEOC had to comply with Rule 23 to prosecute pattern

and practice suits containing claims for back wages, it could easily be locked into a course of posturing its cases which would be inconsistent with the public interest that it has been commanded to zealously protect.

Therefore, this Court feels that requiring the EEOC to comply with Rule 23 when it seeks to obtain back wages would constitute a serious interference with, and intrusion into, the policy making role that the Congress has delegated to the EEOC in determining how to eradicate patterns and practices of discrimination. Back wages claims are properly viewed as integral parts of the relief the EEOC seeks. To isolate a request for such relief and argue that it is merely a matter of individual, and not public interest, is to sever the hand from the body. Such analysis views the back wage remedy in pattern and practice suits entirely out of context.

■ Thus it is the conclusion of this Court that the EEOC does not have to comply with Rule 23 when it acts pursuant to § 707.

### B.
### § 706 Claims

Although our prior discussion of § 707 has necessarily included discussion of § 706, we now turn directly to the question of whether the EEOC must comply with Rule 23 when it acts under § 706 because, as noted before, the Complaint fairly raises such an issue.

The interface between suits or claims that are brought to eradicate pattern and practices of discrimination under § 706 and § 707 seems unclear in this Circuit. This arises out of the nature of the 1972 Amendments and from the decisions of the Sixth Circuit (discussed *supra*) which hold that § 706 permits the EEOC to seek vindication of the public interest, (i. e., a relief that is broader than that which is permitted aggrieved individuals). The case of *EEOC v. Akron Nat'l Bank & Trust Co.*, 78 F.R.D. 684 demonstrates this.[12]

---

**12.** We have already cited the *Akron Bank* case as establishing, *inter alia*, the proposition that

as matter of law the EEOC could not be a member of any of those class of persons who

We agree with *Akron* when it states "Congress provided the EEOC with standing to sue to protect the 'national policy of equal opportunity in employment.' The EEOC thus sues to vindicate the public interest . . . the fact remains that they [the individual and public interests] are two distinct interests. What's more, there is a very real possibility for those two interests to, at times, conflict." *Id.* 687–88. Further, the Court stated that it ". . . is convinced that although the EEOC's public purpose may not always conflict with the interests of the allegedly aggrieved individuals, indeed it may usually not conflict, the potential for such conflict requires the Court to rule that the EEOC is, as a matter of law, incapable of satisfying Rule 23(a)(4)." *Id.* at 688.

The *Akron* case, however, took a very different, and we believe, an erroneous tack from our common point of origin and consensus. First, the *Akron* court concluded that it was in agreement with the ruling by the *Holmes* Court that the EEOC (a) was not exempted from Rule 23 and(b) had to comply with Rule 23 if it wished to prosecute the claims of a class of aggrieved persons under § 706. Second, because the *Akron* Court had determined that the interests of the private litigants and the EEOC were different, it "concluded, as a matter of law, that the EEOC [could] never satisfy the requisites of Rule 23. This conclusion dictates the [additional] conclusion that when the EEOC prosecutes an action pursuant to section 706, *it is limited to seeking relief for the charging party*." *Id.* at 687 (emphasis supplied).

The difficulty that we have with this result is the internal inconsistency of saying in one breath (for the purpose of ascertaining EEOC's class member status) "the EEOC [under § 706] sues to vindicate the public interest" and in the next breath saying (for the purpose of ascertaining class action status) "that when the EEOC prosecutes an action pursuant to Section 706, it is limited to seeking relief for the charging party." As a practical matter, if the EEOC can only seek relief for *charging parties*, how is it to vindicate the interest of the *public*? The interpretation is hypertechnical and leaves the EEOC with the noble tasks of "protecting the national policy of equal opportunity in employment" and "vindicating the public" under § 706 but leaves the EEOC with no muscle to fulfill those Herculin tasks. All it can do is act for others.

The *Akron* case is not without hope or remedy however. The case merely tells the EEOC to use § 707 to effectuate the grander purposes of Title VII.

> Section 707, in effect, permits the EEOC to prosecute a "statutory class action" outside the provisions of Rule 23. . . . [T]his court concludes that Section 707 provides the EEOC with authority to, in the public interest, prosecute a "pattern and practice suit." It further concludes that in prosecuting such a "pattern or practice suit," the EEOC has authority, both in the public interest and as a statutory class representative, to seek back pay relief for aggrieved individuals.

*Id.* at 689–90.

It seems that *Akron* took a noble step toward establishing a logical statutory scheme. If the EEOC seeks to vindicate the public interest, then it should proceed pursuant to § 707; if it has the individual litigants in mind, then it should act pursuant to § 706. However, this analysis must fail for two reasons: (1) The Court still hung on to the "public interest" purpose of the EEOC when it acts pursuant to § 706 albeit its holding would render the EEOC impotent to implement that purpose. (2) It "overlooks" or at best renders useless (by

---

might seek redress pursuant to § 706. I cited this portion of the *Akron* case in order to show how, in this Circuit, the EEOC is not relegated to the 'shoes of the private litigants.' From there I inferred (1) that the EEOC would not have to comply with Rule 23 because it was not seeking to vindicate the same interest of pri-

vate litigants under § 706, and (2) that under the *Holmes* rationale, the synonymity of the EEOC's interests and those of the private litigants was essential to holding the EEOC to the mandates of Rule 23 if it acted pursuant to § 706.

means of academic construction) prior Sixth Circuit holdings that the EEOC, in a § 706 suit, is seeking vindication of public interests (and inferentially requires that the EEOC be able to act to consummate that purpose).

An orderly statutory scheme is a laudible goal. However, we are without authority, in view of the *Kimberly & McLean* cases, to effectuate the goal that logic would dictate.

■ It is our perception that, the difference in the interests of the EEOC and private litigants renders the EEOC unable to meet the requirements of Rule 23. Moreover, recognition of the EEOC's need to adequately represent the public interest in ending patterns and practices of employment discrimination dictates that we cannot properly preclude it from seeking relief under § 706 for more persons aggrieved than the charging parties. Accordingly, the EEOC does not have to comply with Rule 23 regarding this pattern and practice suit sounding in § 706.

### III. OTHER MATTERS

#### A. EEOC Regulations

Part II of the Movant's Complaint is irrelevant. As the EEOC points out, the Regulation that the Defendant claims the EEOC is supposed to follow regarding notice in Commissioner's charge cases, 29 C.F.R. § 1601.25c (1977), has been superseded by the EEOC. *See* 42 Fed.Reg. 55,393 (1977) (to be codified in 29 C.F.R. § 1601.28). The old regulation, 1601.25c provided that "To come within the purview of this section [and thereby receive notice] an individual may either be specifically designated by name *or* be among the class of persons aggrieved by the practices complained of in the charge."

The new regulation, however, has a much more limited notice requirement. 1601.-28(b) provides for "issuance of notice of right to sue following Commission disposition of a charge." Subsection (1) deals with

circumstances where the Commission has found a violation, there has been no voluntary compliance but the EEOC decides not to bring a civil action. Subsection (2) deals with notice to persons not parties but claiming to be aggrieved and where the EEOC has entered into a conciliation agreement. Subsection (3) deals with notice when the EEOC dismisses charges. None of the subsections of the new regulation deal with notice if (a) the EEOC finds a violation, (b) there is no conciliation, *and* (c) the EEOC decides to file a civil action. It would appear that this omission was intentional, especially after the *Holmes* case was decided in July, 1977. Nevertheless, the fact remains that the new regulation nowhere speaks of the EEOC being required to give notice, by virtue of its own regulations, in a factual situation like our own.

The regulation does indicate how, in a class action context, the EEOC feels its duty to give notice is a limited one. In 1601.28(b)(1)(ii) & (b)(3)(ii) the regulation speaks of notice in the setting of Commissioner charge cases (in (b)(1) this relates to no EEOC action when there is a violation and no conciliation; and in (b)(3) this relates to EEOC dismissal). Both read: "In the case of a Commissioner charge, to any member of the class who is named in the charge, identified by the Commissioner in a third-party certificate, or otherwise identified by the Commission as a member of the class." In these contexts, the EEOC sees its duty of notice as arising when it somehow has knowledge of the class member. No duty to determine the identity of those is incumbent upon it (i. e., as expressed in the Rule, the EEOC perceives it has no such duty).

Perhaps the regulation could be challenged as not effectuating the words of § 706(f)(1), under which it was promulgated, "The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission." [13] However, the Movant has not so challenged the new regulation.

---

13. Under the new regulations, notice to aggrieved persons when the EEOC acts pursuant to § 707 is governed by the same regulation,

§ 1601.28. *See* 42 Fed.Reg. 55,393 (1977) (to be codified in 29 C.F.R. § 1601.59).

The whole point about notice turns upon issues of *res judicata* and collateral estoppel. If the interest of individuals and of the EEOC in a pattern and practice suit (whether pursued under § 706 or § 707) are different, then neither of these doctrines has any place in our analysis. One of the essential elements of both doctrines, (to wit, identity of parties) is clearly absent from the picture. As the Plaintiff points out, any award of back pay in a pattern and practice suit can be set off from a subsequent award to a prevailing private litigant. Also, waivers of any right to subsequently sue upon receipt of back pay in a pattern and practice suit has been found a valid method of avoiding subsequent litigation being pursued by private individuals.[14] This method also protects those who have no notice and/or have received no award of back pay (if one was awarded in the pattern suit) because the pattern judgment is not binding upon them.

### B.

### Overbreadth of Complaint

Part III of the Movant's Motion relates to the alleged overbreadth of the Complaint. Defendant maintains that the EEOC has not followed the proper procedure in making the accusations raised by the Complaint and that the Complaint is overbroad because the EEOC did not make, or refrained from making findings, about certain particular allegations. The Defendant asks us to strike those portions of the Complaint regarding such allegations. The EEOC has not responded to this portion of the Defendant's Motion.

The Defendant begins by citing relevant portions of § 706(b):

> If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.

We must begin our analysis by remembering that this is (at least in part) a § 707 lawsuit. It is unclear whether the EEOC must utilize conciliation procedures before instituting a § 707 lawsuit. One of the contentions of the Defendant here is that it has not been afforded the opportunity to conciliate, and resolve amicably outside of Court, the allegations in the Complaint it seeks to strike. Only one case has dealt with a similar issue in our Circuit. In *United States v. Masonry Contractors Ass'n.*, 497 F.2d 871, 875–76 (6th Cir. 1974), the Court found that "pattern and practice suits" brought by the Attorney General (i. e., brought pursuant to the statute before the implementation of the 1972 Amendments) did not require the Attorney General to comply with the provisions regarding notice, informal corrective methods, and time limits for filing the Complaint. All that was required was the Attorney General to have a reasonable basis upon which to believe that the Defendant was involved in a pattern and practice of discrimination.

The intimation by the *Masonry* Court that its holding was predicated upon the inapplicability of the 1972 Amendments has caused one Court to believe that *Masonry* should be read as requiring the EEOC to comply with the "rules" of conciliation, etc., when it acts pursuant to the Amended § 707.

> We have never held, or even suggested, that the EEOC is excused from its statutory duty to conciliate when it seeks assistance of the courts in order to enforce the mandates of Title VII on behalf of specific aggrieved parties, pursuant to § 706 . . . One court has even indicated that the Commission may have similar responsibilities in connection with "pattern and practice" suits brought under § 707 subsequent to the effective date of the 1972 amendments. *United States v. Masonry Contractors Ass'n.*, 6 Cir. 1974, 497 F.2d 871, 875–76 (dicta). *Cf.*

---

14. *See, e. g., United States v. Allegheny-Ludlum Indus.*, 517 F.2d 826, 858–62 (5th Cir. 1975).

§ 707(e) of Title VII, 42 U.S.C. § 2000e6(e).

*United States v. Allegheny-Ludlum Indus.* 517 F.2d 826, 869 (5th Cir. 1975).

It should be noted that the *Allegheny* Court cited § 707(e) in addition to *Masonry.* The last sentence of that subsection reads: "All such actions shall be conducted in accordance with the procedures set forth in Section 2000e–5 [§ 706] of this title." What did Congress mean by this sentence and how does such language, if interpreted as requiring compliance, square with the broader purposes Congress envisioned for § 707 suits? "It was unquestionably the design of Congress in the enactment of § 707 to provide the government with a swift and effective weapon to vindicate the broad public interest in eliminating unlawful practices, at a level which may or may not address the grievances of particular individuals." *United States v. Allegheny-Ludlum Indus.,* 517 F.2d at 843. It was this difficult conflict that precipitated an avoidance of the issue by the *Allegheny* Court. "We have determined, however, that this case does not require us to attempt to settle these intricate questions in terms of congressional intent with respect to jurisdiction." *Id.* at 869.

We too can, and do avoid such issues by analyzing the one thing that § 706 and § 707 both require; namely, a reasonable cause. The question that the Movant has apparently failed to ask is, "Do both sections involve the same type of 'reasonable cause?'" § 706(b) reads in part, "If the Commission determines after such investigation that there is reasonable cause to believe that *the charge* is true . . . ." (emphasis added). The "charge" referred to is "a charge . . . filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer [or others] . . . has engaged in an unlawful employment practice." In § 707(a), that statute reads, "Whenever the Attorney General has reasonable cause to believe that any person or group of persons is *engaged in a pattern or practice of resistance to the full enjoyment*

*of any of the rights secured by this subchapter"* (emphasis added). If we look to the statutes, then we see that the reasonable causes are very different.

▪ In § 707 suits there must be a reasonable cause to find a pattern and practice of discrimination. Mere allegations of particular unlawful activity will not establish a pattern or practice. However, when a pattern and practice suit is initiated a § 706 type of reasonable cause need not exist for each and every allegation that cumulatively establishes the pattern or practice. To so hold would be to defeat the broad purposes of the statute. To require allegations of specific activity having a tendency to establish a pattern or practice and to further require those allegations be supported by a § 706 type of reasonable cause would be improper. Such a pleading requirement would unnecessarily put limitations upon § 707 lawsuits, a result clearly not in line with the strong remedial purposes that Congress envisioned for that section.

▪ Therefore, without getting to the larger question of whether § 707 actions require compliance with § 706 procedures in order to properly invoke this Court's jurisdiction (an issue which the Defendant never argued or alluded to), we hold that a § 707 type of reasonable cause exists in the EEOC's findings.

To the extent the Complaint alleges violation of § 706, however, we agree with the Defendant that reasonable cause does not exist for the following allegations:

(1) Paragraph 8(d) of the Complaint is backed by reasonable cause regarding failure and refusal to provide restroom and locker facilities for women WHO WERE PART OF MAINTENANCE AND PRODUCTION work force. No cause exists as to salaried staff.

(2) Paragraph 8(g) of the Complaint is backed by reasonable cause regarding policies of discipline and discharge that have a disparate effect on BLACKS. The EEOC specifically reserved the issue as to effects upon females.

(3) Paragraph 8(h) found that there was discrimination by maintaining a certain maternity leave policy against SALARIED EMPLOYEES AS TO LEAVE TAKEN PRIOR TO APRIL, 1976. The EEOC reserved its decision with regard to hourly employees (as to leave taken during any period of time). As to salaried employees for maternity leaves taken after April 1976, no decision was made.

■ Defendant makes one further contention; to wit, that any fair reading of the EEOC's letter of findings fails to disclose any reasonable cause to believe that the Defendant failed and refused to prevent harassment and intimidation of Black employees. We disagree. *See* Defendant's Exhibit B at 14 (placing Blacks in training programs and dismissing them); Defendant's Exhibit B at 16–18 (Blacks being more frequently disciplined by the Defendant); Defendant's Exhibit B at 19–21 (discussing disciplining also); and especially Defendant's Exhibit B at 25–28 (the experiences of charging party Clark).

To the extent that the EEOC wishes to prosecute a claim under § 706, it would seem that a separate § 706 Count (with the above modifications) should be plead. The EEOC may elect, however, to drop the § 706 aspects of this case. In either event, it has thirty (30) days from receipt of this Opinion in which to modify its Complaint.

### C.

Request for More Definitive Statement

In Part IV of the Motion, the Defendant, in reliance upon a Sixth Circuit case asks us to require the Plaintiff plead with more specificity:

> Liberal as are the federal rules of pleading, something more than conclusory allegation of systematic racial discrimination is required. Some facts as to when, how, to whom and with what results such discrimination has been applied would seem a minimum required for "a short and plain statement of the grounds upon which the Court's jurisdiction depends."

Fed.R.Civ.P. 8(a).

*Ogletree v. McNamara,* 449 F.2d 93, 98–99 (6th Cir. 1971).

The Plaintiff attempts to distinguish this case on two grounds. First, the issue in *Ogletree,* which dealt with pleading jurisdictional facts, is something that the EEOC claims is not involved in this litigation. Second, and more importantly, *Ogletree* involved a § 706 and *not* a § 707 lawsuit. In support of this distinction, the EEOC asserts that in the § 707 context, a Motion like the Defendant's has never been granted. Plaintiff also cites *United States v. Gustin-Bacon D. v. Certain-Teed Products,* 426 F.2d 539, 543 (10th Cir. 1970), which reads in pertinent part:

> We have searched the debates recorded in volume 110 of the Congressional Record and are unable to find any expressed intent, clear or otherwise, which lends credence to the position assumed by appellees, i. e., a requirement of detailed pleading, setting forth such evidentiary matters as names, dates, places, etc., of discriminatory practices or patterns. Instead, from a full reading of the pertinent section of the Civil Rights Act, we think Congress meant that the Attorney General's belief, that a pattern or practice of racial discrimination in employment exists, must be reflected on the fact [sic] of the Complaint. And that this may be done by a pleading of fundamental facts of the character herein alleged. Here the Attorney General has, by enlarging upon the fundamental claims of job discrimination, alleged additional facts to clearly demonstrate his belief in the existence of an illegal pattern or practice of racial discrimination.

*Id.*

■ At first glance, it may look like § 707 suits are being exempted from Rule 8 as well as from Rule 23, but closer inspection reveals otherwise. The difference in the § 707 and § 706 lawsuits, for the purpose of determining the sufficiency of the pleadings, is the difference in alleging a pattern and practice and alleging specific instances of unlawful conduct. Clearly, the former is a broader allegation and can be

properly plead with greater generality (i. e., greater in absolute terms). We saw an analogous notion when we examined the difference between reasonable cause to believe a pattern and practice of discrimination existed and reasonable cause to believe there has been unlawful activity within the meaning of the Civil Rights Act of 1964.

■ It should be pointed out that even as to § 706 claims *Ogletree* has been criticized.[15] Nevertheless, it is compelling precedent in this Circuit. Consequently, if the EEOC elects to amend its Complaint to include a § 706 Count (as well as a § 707 claim), rather than electing to drop the § 706 aspects of the suit, then it follows that as to those § 706 claims, we must require it to make a more definite statement regarding "when, how, to whom, and with what results such discrimination has been applied." We find, however, as to the § 707 aspects of the Complaint, Rule 8 has been satisfied.

It is so ordered.

---

**15.** *McCray v. Standard Oil Co. (Indiana)*, 76 F.R.D. 490, 496–97 (N.D.Ill.1977).

Standard's real argument is that the complaint asks the company to investigate a wide range of employment practices and to evaluate discrimination on every conceivable basis, with few guideposts to help it pinpoint exactly which policies or procedures are under attack. In short, the complaint resembles "a shotgun blast fired while leaning out a window." *EEOC v. D. H. Holmes Co., Ltd.*, 556 F.2d 787, 796 n. 14 (5th Cir. 1977). Nevertheless, to complete this metaphor, we believe Rule 8 only requires the complaint to describe the direction in which the gun is pointed, and not to detail the area of impact. The pleadings are not designed to carry the burden of formulating the issues and advising the adverse party of the facts involved. Depositions and discovery procedures perform that function. 2A Moore's Federal Practice Par. 8.13 (2d ed. 1977). Defendant relies primarily on *Ogletree v. McNamara*, 449 F.2d

93 (6th Cir. 1971) in which the court held that a broad allegation of "systematic racially discriminatory employment" must be supported by facts as to when, how, to whom and with what results such discrimination has been applied. 449 F.2d at 98. Although this standard would render insufficient the complaint before us, we believe the court's reasoning reflects discarded notions that a complaint must "allege facts as opposed to generalities and conclusions." *Id.* The Supreme Court in *Conley [v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)] specifically rejected the argument that a complaint must set forth specific facts to support its general allegations of discrimination. 355 U.S. at 47, 78 S.Ct. 99. The better view is that a Title VII complaint is sufficient if it alleges fundamental facts reflecting a pattern or practice of racial discrimination. *United States v. Gustin-Bacon Div. Certain-Teed Products*, 426 F.2d 539, 543 (10th Cir. 1970).