**Edward J. OGLETREE et al., Plaintiffs-Appellants,**

**v.**

**Robert S. McNAMARA et al., Defendants-Appellees.**

**No. 20927.**

United States Court of Appeals, Sixth Circuit.

Sept. 23, 1971.

---

Nathaniel R. Jones, and William D. Wells, New York City, for plaintiffs-appellants; William Davis, Columbus, Ohio, on brief; Anne Gross Feldman, Joan Franklin, New York City, of counsel.

Robert M. Feinson, Atty., Dept. of Justice, Washington, D. C., for defendants-appellees; L. Patrick Gray, III, Asst. Atty. Gen., Walter H. Fleischer, Atty., Dept. of Justice, Washington, D. C., William W. Milligan, U. S. Atty., Dayton, Ohio, on brief.

Before PHILLIPS, Chief Judge, and EDWARDS and BROOKS, Circuit Judges.

EDWARDS, Circuit Judge.

This is not a simple case either to describe or decide. It is a wholesale attack upon the employment practices and the system for reviewing same at the United States Air Force's Wright Patterson Air Force Base. It alleges systematic racial discrimination and the unconstitutionality of the very orders and regulations which purport to ban such discrimination.

Since the complaint was dismissed on appellees' motion for summary judgment, the controversy on appeal concerns the content and meaning of the complaint. The charges contained in the 12 printed pages of the complaint are both comprehensive and vehement, but they are notably lacking in specificity.

Plaintiffs are 14 named employees of the Wright Patterson Air Force Base and the class of all present and former Negro employees at that base purported to be represented by them.

The District Judge who heard the motion to dismiss and ultimately granted it, summarized the amended complaint filed by plaintiffs as follows:

"1. That the merit promotion program adopted by the Air Force and authorized by the Civil Service Commission pursuant to Executive Order 11246 is administered in a discriminatory manner in that the tests employed are culturally and racially biased and that supervisors award lower appraisal ratings to negroes.

"2. That Air Force and Civil Service Commission Regulations fail to provide for impartial consideration of discrimination complaints, fail to provide fair investigation, hearing and review procedures, and preclude equal employment opportunity practices contrary to Executive Order 11246, the Civil Rights Act of 1964, and the Fifth and Ninth Amendments to the United States Constitution.

"3. That the employment practices concerning negroes are contrary to the Fifth and Thirteenth Amendments, that the Air Force Merit Promotion Program is unconstitutionally administered and the implementing Air Force and Civil Service Commission Regulations conflict with the Civil Rights Act of 1964, Executive Order 11245, and the Fifth and Ninth Amendments to the United States Constitution."

The government's motion for summary judgment was based on three grounds: 1) sovereign immunity, 2) failure to state a cause of action due to the conclusory character of pleadings, and 3) failure to exhaust remedies.

The District Judge's rationale for entering summary judgment was that basically the action was against the United

States in its sovereign capacity and that the United States had not consented to be sued and was immune to the suit. He relied primarily upon Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970), and Congress of Racial Equality v. Commissioner, Social Security Administration, 270 F.Supp. 537 (D.C.Md.1967).

Appellants complain that the District Judge gave their complaint a narrow reading. Their brief states:

"The District Court, in a selective reading of the complaint, has reduced the entire complaint to merely a request for relief, which it held is barred by the doctrine of sovereign immunity:

*'The relief requested in this action requiring the officials of the executive branch to suspend procedures for determining discrimination complaints and to initiate new procedures* would, in effect, operate against the United States and would interfere with public administration. The requested relief is relief with respect to which the United States has not consented to be sued.' (emphasis added)

"The relief sought in this case was not limited to that alluded to by the court. Rather the plaintiffs also asked for a determination as to:

'1. whether or not systematic racially discriminatory employment reigns at Wright Patterson Air Force Base,

'2. whether or not the defendants subject the complainants to conditions designed to eliminate their protest of discriminatory employment practices in violation of their First Amendment rights,

'3. whether or not the merit promotion plan is, in fact, a tool for facilitating and perpetuating discrimination against plaintiffs and their class,

'4. whether or not the Civil Service Commission and Depart-

ment of the Air Force regulations regarding equal employment opportunity are unconstitutional on their face, as well as in their application, and

'5. whether or not Executive Order 11246 is unconstitutional because it authorizes the promulgation of equal employment regulations which deny complainants due process.' "

The equal opportunity system for federal employees which plaintiffs seek to enjoin has a substantial foundation.

The Thirteenth Amendment, which prohibits both "slavery" and "involuntary servitude" itself states:

"(b) Congress shall have power to enforce this article by appropriate legislation." U.S.Const., Amend. XIII, § 2.

Employing this power, Congress has adopted equal opportunity legislation assigning responsibility as to federal employment to the President. Title 5, United States Code, provides in pertinent part:

### "SUBCHAPTER II.—ANTI-DISCRIMINATION IN EMPLOYMENT

"§ 7151. Policy

"It is the policy of the United States to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex, or national origin. The President shall use his existing authority to carry out this policy." Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 523.

Congress has also specifically exempted the United States as an "employer" from the Equal Opportunities Subchapter of the Civil Rights Act:

### "SUBCHAPTER VI.—EQUAL EMPLOYMENT OPPORTUNITIES

"§ 2000e. Definitions

"For the purpose of this subchapter

\*　　\*　　\*　　\*　　\*　　\*

"(b) The term 'employer' * * * does not include (1) the United States * * *." 42 U.S.C. § 2000e(b) (1964).

In turn the President has undertaken implementation of the Constitutional and statutory policy. Executive Order No. 11246, 30 FR 12319, provides in part:

## "EQUAL EMPLOYMENT OPPORTUNITY

"Under and by virtue of the authority vested in me as President of the United States by the Constitution and statutes of the United States, it is ordered as follows:

## "PART I—NONDISCRIMINATION IN GOVERNMENT EMPLOYMENT

"SECTION 101. It is the policy of the Government of the United States to provide equal opportunity in Federal employment for all qualified persons, to prohibit discrimination in employment because of race, creed, color, or national origin, and to promote the full realization of equal employment opportunity through a positive, continuing program in each executive department and agency. The policy of equal opportunity applies to every aspect of Federal employment policy and practice.

"SEC. 102. The head of each executive department and agency shall establish and maintain a positive program of equal employment opportunity for all civilian employees and applicants for employment within his jurisdiction in accordance with the policy set forth in Section 101.

"SEC. 103. The Civil Service Commission shall supervise and provide leadership and guidance in the conduct of equal employment opportunity programs for the civilian employees of and applications for employment within the executive departments and agencies and shall review agency program accomplishments periodically.

In order to facilitate the achievement of a model program for equal employment opportunity in the Federal service, the Commission may consult from time to time with such individuals, groups, or organizations as may be of assistance in improving the Federal program and realizing the objectives of this Part.

"SEC. 104. The Civil Service Commission shall provide for the prompt, fair, and impartial consideration of all complaints of discrimination in Federal employment on the basis of race, creed, color, or national origin., Procedures for the consideration of complaints shall include at least one impartial review within the executive department or agency and shall provide for appeal to the Civil Service Commission.

"SEC. 105. The Civil Service Commission shall issue such regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities under this Part, and the head of each executive department and agency shall comply with the regulations, orders, and instructions issued by the Commission under this Part." Executive Order No. 11246, 30 Fed.Reg. 1239 (1965), modified by Exec. Order No. 11478, 34 Fed.Reg. 12985 (1969).

In turn the Civil Service Commission has adopted a full set of Equal Opportunity Regulations (Civil Service Commission's Equal Opportunity Regulations, 5 C.F.R. § 713 (1971)) and the Air Force has done likewise (Air Force Regulations #40-713). While these regulations are too lengthy to quote in full, we have reviewed them in detail and find them completely consistent in stated purpose with the Presidential order, the statutory policy and the Thirteenth Amendment set forth above.

■■■ While we note appellants' due process contentions, like the District Judge, we find no constitutional invalidity in an administrative regulation which provides for complaints, for hear-

ings, for confrontation and cross-examination of witnesses, and for appeal to the Air Force Equal Opportunity Officer appointed by the Secretary of the Air Force and then for appeal to the Civil Service Commission. The Air Force regulations do allow the employee to have a representative of his own choosing at the hearing. *See* DuBois Clubs v. Clark, 389 U.S. 309, 311, 88 S. Ct. 450, 19 L.Ed.2d 546 (1967).

We find no federal constitutional violation in the fact that the Air Force does not supply complainants with legal representation, nor in the fact that the final agency review officer is an appointee of the Secretary of the Air Force. We find no facial unconstitutionality in the Presidential order or the Civil Service or Air Force Regulations. Like the District Judge, we hold "these procedures satisfy due process and do not conflict with the Fifth Amendment."

As we read appellants' complaint and brief, they also allege another type of constitutional deprivation in points 1, 2 and 3 of the portion of their brief quoted above. These points allege in broad general terms "systematic racially discriminatory employment"; "conditions designed to eliminate their protest"; and that the merit promotion plan is "a tool for * * * perpetuating discrimination."

Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), long ago held that:

> "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still

within the prohibition of the Constitution." *Id.* at 373–374, 6 S.Ct. at 1073.

Our problem with appellants' complaint here is twofold. They have failed signally to allege facts as opposed to generalities and conclusions. And they have failed to allege exhaustion of the administrative machinery available to them in the agency and the Civil Service Commission.[1]

This complaint does not state the jobs held by plaintiffs, or the jobs they seek, or any applications or complaints concerning their employment or promotions which they may have made individually or collectively, or what happened to such applications or complaints, or any complaints or charges filed against such employees individually or collectively, or the disposition of such charges.

While the complaint does allege in the most general terms that Civil Service examinations conducted by defendants are "racially and culturally biased," they do not allege that complaints pertaining to these examinations have been filed with either the Air Force or the Civil Service Commission, nor what disposition may have been made in relation thereto. In addition, the amended complaint does not allege that the tests were unrelated to the actual duties which were required for the classifications involved. *Cf.* Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■ Liberal as are the federal rules of pleading, something more than conclusory allegation of systematic racial discrimination is required. Some facts as to when, how, to whom, and with what results such discrimination has been applied would seem a minimum required for "a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed.R.Civ.P. 8

---

1. We have, of course, noted the Civil Service Commission files pertaining to certain individual employee complaints which were admitted as exhibits before the District Court prior to the entry of the judgment appealed from. Neither the number

of these complaints nor anything about their processing or disposition appears from the face of them to lend factual substance to the claim of systematic racial discrimination.

(a); Car-Two, Inc. v. City of Dayton, 357 F.2d 921 (6th Cir. 1969); Corcoran v. Yorty, 347 F.2d 222 (9th Cir.), cert. denied, 382 U.S. 966, 86 S.Ct. 458, 15 L. Ed.2d 370 (1965).

This is particularly true when, as here, Congress and the President have authorized and ordered and the Air Force and Civil Service Commission have created a complaint system to deal with the exact sort of complaints alleged, and plaintiffs fail to allege that they have undertaken to vindicate their claims through that system.

■ We recognize, of course, that the federal courts do not require exhaustion of remedies when to attempt such exhaustion would obviously be futile or where irreparable damage is likely to occur in the meantime. Public Utilities Comm'n v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

■ From the current pleading, however, the District Judge had absolutely no way of determining that plaintiffs' rights could not be vindicated through the carefully created administrative machinery. We note that appellants' brief advises that as to some of plaintiffs, the administrative procedures have now been exhausted. These facts, however, were not alleged in the amended complaint upon which summary judgment was rendered, and consequently, are not properly before us.

Peculiarly appropriate to this aspect of our instant appeal is the language of the Supreme Court:

"It is evident that Congress has provided a way for appellants to raise their constitutional claims. But appellants, denying that they are within the coverage of the Act, wish to litigate these claims in an injunctive proceeding in the District Court. The effect would be that important and difficult constitutional issues would be decided devoid of factual context and before it was clear that appellants were covered by the Act. We have previously refused to decide the constitutionality of the very provisions involved here because it was not clear that the Act would be applied to the objecting parties. American Committee for Protection of Foreign Born v. S. A.C.B., 380 U.S. 503, 85 S.Ct. 1148, 14 L.Ed.2d 39; Veterans of the Abraham Lincoln Brigade v. S.A.C.B., 380 U.S. 513, 85 S.Ct. 1153, 14 L.Ed.2d 46. Similarly, the District Court should not be forced to decide these constitutional questions in a vacuum." DuBois Clubs v. Clark, 389 U.S. 309, 311–312, 88 S.Ct. 450, 452, 19 L.Ed.2d 546 (1967).

See also, Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S. Ct. 459, 82 L.Ed. 638 (1938); Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); McKart v. United States, 395 U.S. 185, 193–194, 89 S.Ct. 1657, 23 L. Ed.2d 194 (1969).

■ Finally, to the extent that plaintiffs' complaint seeks completely to enjoin 1) the operation of the Civil Service and Air Force antidiscrimination regulations, and 2) the Air Force promotion system, we believe the District Judge was correct in terming this suit an action against the United States in its sovereign capacity as to which it has not consented to be sued. See Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970).

If granted in full as prayed for, the relief sought by the plaintiffs would at least temporarily halt all employee promotions and would require the United States District Court in the Southern District of Ohio to open its doors for

plenary hearings on every employee complaint alleging that lower level personnel decisions resulted from or were affected by racial bias. In this regard the following comment from the District Judge's opinion does not seem far-fetched:

"In substance the requested relief would require this court to supervise and control the procedures, adopted by the defendants in the exercise of their discretion as officials of the executive branch of government, for the hiring, promotion and termination of civilian employees at one of this country's largest military installations."

The operation of our defense establishments is, of course, close to the core of the concept of sovereign immunity. Perhaps the minimum statement of that doctrine is that litigation must not be allowed to stop government in its tracks. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In this regard the effect of the action upon the sovereign rather than its form is controlling. The fact that the defendants are all named as individuals does not change the result. Larson v. Domestic & Foreign Corp., *supra*; Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Hawaii v. Gordon, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963).

In this last case the Supreme Court stated: "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id.* at 58, 83 S.Ct. at 1053.

The judgment of the District Court is affirmed, but without prejudice to judicial review of complaints specifically alleging exhaustion of administrative remedies or facts which demonstrate that such exhaustion is futile.