**Anita BIVINS, Plaintiff,**

v.

**JEFFERS VET SUPPLY, a corporation; Keith Jeffers, as supervisor and individually, Defendants.**

**Civ. A. No. 94–D–666–S.**

United States District Court, M.D. Alabama, Southern Division.

Nov. 23, 1994.

---

Kenneth Coy Sheets, Jr., Dothan, AL, for plaintiff.

Leslie McCafferty Allen, David R. Boyd, Montgomery, AL, for defendants.

### MEMORANDUM OPINION

De MENT, District Judge.

Before the court is defendants Jeffers Vet Supply ("JVS") and Keith Jeffers' ("Jeffers") motion for summary judgment filed September 26, 1994. Defendants contemporaneously filed a brief and tendered evidence in support of their motion. Plaintiff Anita Bivins failed to respond to the motion.

Plaintiff, a black female, commenced this action based upon racial discrimination, asserting claims under 42 U.S.C. §§ 1981 and 1983, as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through

2000e–17, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Bivins filed a charge of discrimination with the Equal Opportunity Employment Commission on January 13, 1993, alleging racial harassment and constructive discharge. The EEOC issued a right-to-sue letter on March 3, 1994; plaintiff subsequently filed her complaint in federal court on May 31, 1994. Ex. 1 and 2, attached to Pl's Compl. After careful consideration of the arguments of counsel for defendants, the relevant case law and the record as a whole, the court issues the following opinion.

## JURISDICTION

Based upon 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367 (supplemental jurisdiction), 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f)(3), the court properly exercises subject matter jurisdiction over this action. *See* Order on Pretrial Hearing at ¶ 3. The parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

■ On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

## UNDISPUTED MATERIAL FACTS

Jeffers Vet Supply ("JVS") is a mail-order veterinary supply business employing office staff and warehouse personnel. Pl.'s Dep. at 77; Keith Jeffers' Aff. In September 1992, Bivins submitted her resume to JVS in response to a newspaper advertisement. Pl.'s Dep. at 73. Subsequent to an interview with Keith Jeffers ("Jeffers") on September 22, 1992, defendants offered her the position of telephone operator. *Id.* at 74, 76; Jeffers' Aff. Bivins accepted the position and began her employment with JVS on September 24, 1992. Pl.'s Dep. at 73–76, 83. Her duties as a telephone operator included accepting customer orders by telephone and assisting customers at the front counter. *Id.* at 76–78. Bivins worked for JVS until October 22, 1992. *Id.* at 83. Plaintiff, in her complaint, alleges that defendants constructively discharged her "due to their outrageous conduct toward plaintiff because of her race." Pl.'s Compl. at ¶ 9. Defendants, however, have proffered evidence that she voluntarily quit. Defs.' Br.Supp.Mot.Summ.J. at 2.

Defendants contend that during the twenty-nine days of her employment with JVS, plaintiff was repeatedly disciplined for failure to follow work rules and had numerous difficulties working with other JVS employees. Defendants' brief in support of their motion

for summary judgment is replete with examples of disciplinary problems. Beginning on October 6, 1992, a supervisor and defendant Jeffers issued a written warning admonishing Bivins for verbally complaining about assigned work in front of customers and for refusing to cooperate with a supervisor. Six days later, Bivins received a second written warning for refusing to assist customers at the front counter. Def.Ex. 6 to Pl.'s Dep. The warning includes a space for employee comments. Plaintiff wrote as follows: "This is not true; I always ask customers if they have been helped; customer told me 'yes.' I proceeded on with my other duties. Don't understand why I've been counsel [sic] about this because I did what I was told to do, and I really don't appreciate being harassed." *Id.*

On October 15, 1992, Bivins received another warning for taking an extended lunch break; plaintiff took fifty-four minutes instead of the allotted forty-five minutes.[1]

Def.Ex. 7 to Pl.'s Dep. The same day plaintiff allegedly suffered an on-the-job back injury. Thus, defendants placed her on light duty for one week. Pl.'s Dep. at 120–21. On October 20, 1992, defendants issued a warning for failure to comply with the work restrictions imposed on her because of her back injury. Pl.'s Dep. at 123; Def.Ex. 5 to Pl.'s Dep.

On October 22, 1992, Bivins had an altercation with Martha Cook, a white telephone operator with whom Bivins had trouble getting along.[2] The dispute concerned who should cover the front counter. Bivins followed Cook into the warehouse where they exchanged words, and Cook allegedly slapped Bivins' arm and told her to get out of her face.[3] Pl.'s Dep. at 146, 147; Jeffers' Aff. None of the discipline received, and neither of these exchanges with co-employees were related to Bivins' race. Pl.'s Dep. at 117; Jeffers' Aff.[4] According to defendants,

---

1. Bivins testified that this warning did not have anything to do with her race. Pl.'s Dep. at 136.

2. A previous altercation between Bivins and Cook occurred on October 8, 1992. Cook apparently "snapped at Bivins because Bivins interfered with Cook's ability to assist a customer at the counter." Jeffers' Aff. Cook received a written warning for unbecoming conduct at the front counter. *Id.* and Ex. C attached thereto.

3. According to Jeffers' investigation of the incident, Cook pushed Bivins' arm with her hand after Bivins threatened to fight Cook and had made comments about the recent death of Cook's mother. Jeffers' Aff.

4. In plaintiff's deposition testimony, she made conclusory allegations that each event she encountered and each warning she received was motivated by the fact that she is black. She testified that the episode with co-employee Sandy was related to her race "[b]ecause I don't think ... she just would have kicked anybody for no apparent reason at all. She didn't, you know, know me, and she had no right to just—I would be afraid just to go kick somebody." Pl.'s Dep. at 115. When probed further how the incident related to race, Bivins stated "If she was [sic] joking or trying to pick, she didn't have to put her feet on me." *Id.* Bivins later stated that she did not "know if [Sandy] did it because of race." She stated, "I don't know the reason why she did it, but I felt though that it was because I was black." *Id.* at 117. She was not sure if Sandy had any problems with any other black persons. *Id.*

When asked if plaintiff thought that defendants' reasons for issuing the warning on October 22, 1992 for violating work restrictions were racially motivated, Bivins responded, "I just think that they should have never asked me to go get it when everybody there, [including] the employees and supervisors[,] knew that I had hurt my back and everybody knew that I was on light duties. So I don't know what was really going on." *Id.* at 128–29. When asked about the October 12, 1992, warning, Bivins stated that she received the warning because she was black "[b]ecause I think they should have better things to have been doing other than to be harassing me when I knew that the customer was first priority." *Id.* at 133. When asked if she was contending that black employees of JVS were disciplined differently than white employees, Bivins responded, "I don't know what was going on. I basically know ... what I experienced. But with somebody else, I don't know what was going on.... [E]verybody was wrote up for the little kicking." *Id.* at 134. Bivins further admitted that the warning she received on October 15, 1992 for taking an extended lunch hour had nothing to do with her race. *Id.* at 136.

Bivins averred that the problems she encountered with Martha Cook related to race "[b]ecause I tried my best to get along with her and everything that I tried to do to get along to be friendly with her did not work." *Id.* at 144. She further testified, "[i]f I'm a nice person to her and I never did anything to her and I'm just only trying to have a good working relation with her, she has no right to talk to me and disrespect me like I'm nothing. She has no right to put her

plaintiff voluntarily quit her job immediately after the October 22 incident. Pl.'s Dep. at 70, 150.

The court, after a careful and exacting review of the record, has found only one incident occurring at JVS which related in any way to race. This was a statement by a white co-employee, Kimber Brown, in which the term "nigger" was used. On October 3, 1992, Bivins was standing near Brown talking loudly to another black employee, Pam Ivory, while Brown was taking a telephone order. When Bivins and Ivory continued to talk loudly after Brown requested that they move away if they were going to carry on a conversation, Brown made a comment which included the term "nigger." Pl.'s Dep. at 85, 87; Brown Aff. Bivins and Ivory reported this incident to a supervisor and to Jeffers. *Id.* at 85, 89.

Jeffers immediately began to investigate the allegation and offered to terminate Brown. Ivory stated that she did not want Brown to lose her job. Jeffers' Aff. When Brown reported for work the following day, Jeffers immediately confronted her about the incident. As a condition of continued employment, Brown was required to apologize to both Ivory and Bivins. *Id.* at 92; Jeffers' Aff.; Brown Aff. In addition, Brown received two written warnings, one for inappropriate conduct toward a fellow employee and one for inappropriate conduct toward the customer who had been on the telephone when the racial comment was made. Jeffers' Aff. and Ex. A and B attached thereto. Jeffers lectured Brown sternly, and she was informed in writing that if she ever made another derogatory remark, she would be terminated immediately. Bivins never reported any other comments or problems to Jeffers.[5] Jeffers' Aff. Nor did Bivins object to the disciplinary actions taken to correct the situation with Brown. *Id.*

Bivins filed a charge of discrimination with the EEOC on January 13, 1993, alleging

racial harassment and constructive discharge. The EEOC issued a right-to-sue letter on March 3, 1994. Ex. 1 and 2, attached to Pl.'s Compl. Bivins filed this action on May 31, 1994, asserting additional claims of the state law tort of outrage, as well as discrimination in terms of salary, job assignments, hiring practices and work environment.

Defendants in their uncontradicted motion for summary judgment assert that most of the claims of discrimination asserted in the complaint are outside the scope of Bivins' EEOC charge and, thus, should be dismissed as a matter of law. Defendants further argue that the claims within the scope of the charge are due to be dismissed because Bivins has failed to establish that she was subjected to a hostile work environment or that she was constructively discharged. The court agrees.

## DISCUSSION

At the outset, the court notes that the plaintiff has failed to respond to the motion for summary judgment. In federal court, a plaintiff may not merely "rest on its pleadings" and survive summary judgment. Fed. Rule Civ.Proc.Rule 56(e) states in part:

> When a motion for summary judgment is made and supported as provided in this rule, **an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.** (Emphasis supplied.)

### A. *Scope of Charge*

■ Before addressing the merits of plaintiff's Title VII claims, the court will address

---

hand on me. Now, I could have acted up real ugly and hit her back." *Id.* at 153.

Bivins also testified that the mere fact that she encountered each of the above incidents, in and of itself, "prove[d] itself to be true that it was the color of [her] skin." *Id.* at 201.

5. Bivins also alleges that Brown, after apologizing, commented that "whites should be with whites and blacks should be with blacks." Pl.'s Dep. at 93. Bivins did not report this alleged comment to Jeffers or her supervisor, choosing instead to "let it go." *Id.* at 95.

defendants' claim that many of the allegations in plaintiff's judicial complaint are not contained within her EEOC charge and, thus, should be dismissed as a matter of law. The scope of a judicial complaint under Title VII is limited to the acts of discrimination contained in the EEOC charge or claims " 'like or related' " to the claims raised in the charge. *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1569 (11th Cir.1987); *See also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970) (holding that "the allegations in a judicial complaint ... 'may encompass any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission' ").

■ Here, the complaint, which remains in its original form, claims that plaintiff was (1) "not paid equally for comparable job positions and experience"; (2) subjected to "acts and practices during the hiring process" which were discriminatory; (3) treated differently in terms of job assignments; (4) treated differently in terms of discipline; and (5) subjected to a hostile work environment. Compl. at ¶ 10. *See also* Order on the Pretrial Hearing. The only claim in the complaint which plaintiff also raised in her EEOC charge is that defendants subjected her to a hostile work environment. Nowhere in Bivins' EEOC charge or in the two statements she submitted to the EEOC does she mention anything other than her belief that she was constructively discharged due to a hostile work environment. Ex. 1 to Compl.; Ex. 2 and 10 to Pl.'s Dep. By limiting the scope of her charge, Bivins has waived any right to allege discriminatory treatment in terms of salary, job assignments, disciplinary actions and hiring practices. Therefore, all of Bivins' Title VII claims except those related to constructive discharge and hostile work environment are due to be dismissed as a matter of law. The court now turns to the merits of the hostile work environment and constructive discharge claim.

**6.** Under Title VII, "abusive work environment" is interchangeable with "hostile work environment." *Harris v. Forklift Systems, Inc.*, ⸻ U.S.

### B. *Hostile Work Environment* [6]

■ Bivins' claim of racial harassment under Title VII is premised on the contention that such harassment created a hostile work environment. Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). This section prohibits an employer from maintaining a hostile work environment.

■ To prove a prima facie case of hostile working environment, plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) respondeat superior. *Henson v. Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982).

Plaintiff clearly belongs to a protected class. In proving the second element of her prima facie case, that the racial harassment was unwelcome, plaintiff must show that she neither "solicit[ed] nor incite[d] it, and ... that [she] regarded the conduct as undesirable or offensive." *Id.* at 903. Plaintiff has failed to present any facts to allow a trier of fact to conclude that plaintiff was subjected to unwelcome racial harassment. Furthermore, based upon the evidence presented before the court, no jury could rationally conclude that but for the fact plaintiff was black, she would not have been the object of unwelcome harassment by her co-workers.

■ Likewise, plaintiff has failed to establish the third element of her prima facie case. Any of the conduct complained of, including the incident between Bivins and Cook on the day Bivins resigned, had anything whatsoever to do with race. *See* footnote 5, *infra.* Title VII does not create a cause of action for unpleasant working conditions caused by something other than a protected status, in this case race.

⸻, ⸻, 114 S.Ct. 367, 369, 126 L.Ed.2d 295 (1993).

To satisfy the fourth element of her prima facie case, plaintiff must show that the harassment was "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) *Id.* at ——, 114 S.Ct. at 370. In determining this question, courts must look to the totality of circumstances. *Id.* at ——, 114 S.Ct. at 371. While a " 'mere utterance of an ... epithet which engenders offensive feelings in a employee,' does not sufficiently affect the conditions of employment to implicate Title VII," the environment does not have to be so severe as to cause a "nervous breakdown" or "seriously affect employees' psychological well-being." *Id.* at ——, 114 S.Ct. at 370–71 (citations omitted).

Here, the only incident involving a racial epithet was the one remark by Cook when she used the term "nigger." Furthermore, the evidence unequivocally shows that defendants addressed the situation promptly and efficiently. Unfortunately for plaintiff, a "mere utterance of an ... epithet which engenders offensive feelings" does not adversely affect a term or condition of employment.

Finally, a plaintiff, in order to show indirect liability of an employer (respondeat superior), must first prove that the employer knew or should have known of the alleged discriminatory conduct. *Steele v. Offshore Shipbuilding,* 867 F.2d 1311, 1316 (11th Cir. 1989). The only incident of improper conduct as to racial remarks is the isolated racial comment by a co-employee, Kimber Brown. It is undisputed that defendants were aware of plaintiff's one isolated racial remark. The inquiry, however, does not end here. Plaintiff also must show that defendants failed to take "prompt and appropriate remedial action" in responding to the plaintiff's allegations. *Sparks v. Regional Medical Center Bd.,* 792 F.Supp. 735, 744 (N.D.Ala.1992); *Steele,* 867 F.2d at 1317.

Again, there is no factual dispute that Jeffers immediately took corrective action when he learned that Bivins and Ivory had been subjected to an inappropriate comment. Jeffers discussed the situation in detail with Bivins and Ivory, requesting their input as to the appropriate disciplinary action to be taken. When he suggested that Brown be terminated, Ivory requested that he not do so. As a condition of continued employment at JVS, Jeffers required Brown to formally apologize to both Bivins and Ivory and to refrain from ever making another derogatory remark. In addition, Brown received a strong oral reprimand, two written warnings, and was told that if there were ever another incident of this type she would be terminated immediately. After the warnings, Brown did *not* repeat her misconduct. Jeffers' Aff.; Brown Aff. Neither Bivins nor Ivory expressed any dissatisfaction with the disciplinary action taken with respect to Brown and the incident.[7]

From aught that appears, Jeffers did what ought to be done when faced with allegations that an employee has been subjected to racial harassment. He took the allegation seriously; he conducted a prompt and thorough investigation; and he immediately implemented remedial and disciplinary measures based on the results of the investigation. This single racial epithet, with such prompt and proper action, cannot create a hostile working environment within the coverage of Title VII.

As demonstrated, plaintiff has failed to establish the crucial elements of her prima facie case. Moreover, plaintiff has failed to provide any evidence more than conclusory allegations listed in her complaint and the pretrial order. Such allegations cannot interpose genuine issues of material fact into the litigation, so as to preclude entry of a summary judgment. *See Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted) (holding that "if the evidence is merely

---

7. Bivins testified that Jeffers asked her what she thought should be done to Brown, and Bivens responded that "he was the person in charge and owned the place and he knowed [sic] what was the right thing to do." Pl.'s Dep. at 91. According to Bivins, Ivory was also asked, and she said it did not matter "as long as it didn't happen again." *Id.*

colorable or is not significantly probative, summary judgment may be granted").

■ Moreover, Bivins cannot prevail because she has not shown even a scintilla of evidence that her employment was "adversely affected." To establish a Title VII violation based on a hostile work environment, a plaintiff must show that his or her employer "creat[ed] or condon[ed] an environment at the workplace which significantly and adversely affect[ed] an employee because of his [or her] race or ethnicity. . . ." *Henson,* 682 F.2d at 901. Bivins continued to work for several weeks after the comment was made, never again complaining about being treated differently because of her race. She has presented no evidence that the discipline she received for failure to follow work rules was different in type or frequency from that received by other employees, black and white, who engaged in similar misconduct. In fact, the evidence before this Court establishes just the opposite. *See* Jeffers' Aff. Bivins' participation and acquiescence in the form of discipline to be administered to the only co-worker she ever complained about, and her continued employment thereafter with no adverse effect, both preclude her from establishing employer liability for an alleged violation of Title VII. *See Williams v. Mead Coated Board, Inc.,* 836 F.Supp. 1552 (M.D.Ala.1993) (De Ment, J.).

### C. *Constructive Discharge*

■ Likewise, Bivins has failed to prove that she was constructively discharged. A plaintiff succeeds in establishing a constructive discharge claim when the complained of discriminatory conduct "was so intolerable that a reasonable person in [her] position would be compelled to resign." *Morgan v. Ford,* 6 F.3d 750, 755 (11th Cir. 1993) (*quoting Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1317 (11th Cir.1989) (citations omitted)). *See also,* 42 U.S.C. § 2000e–2(a)(1). Plaintiff has once again failed to raise a material question of fact as to why her employment was intolerable. The only racial incident to which Bivins was exposed was the inappropriate comment by co-worker Brown on October 3, 1992. As already discussed, this incident was addressed promptly and appropriately by the company. This isolated incident clearly did not, in and of itself, create a work environment so unpleasant that a reasonable person would feel compelled to resign, particularly since the offending employee was immediately and appropriately disciplined and created no further problems for Bivins. *Sparks,* 792 F.Supp. at 735.

■ Moreover, Title VII does not create a cause of action for constructive discharge where—as happened here—the employee assumes the worst and resigns before management is given a chance to rectify the situation. *See Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536 (11th Cir.1987). Within minutes of her argument with Cook, Bivins requested her final paycheck and left the premises. If the Cook incident in fact prompted Bivins' decision to quit, she apparently assumed that the situation would not be addressed appropriately, an assumption that was totally unfounded given Jeffers' prompt response to her previous complaint about Brown's racial comment. Jeffers' Aff.

### D. *Intentional Infliction of Emotional Distress* (Outrage)

■ Plaintiff also contends that she is entitled to recovery under the tort of outrage, also known as intentional infliction of emotional distress. The Supreme Court of Alabama has restricted the confines of this tort, allowing for recovering "only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993). To establish a prima facie case of outrage, "the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Id.* at 1043 (citing *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala. 1981) (adopting the tort of outrage in Alabama)). The conduct complained of must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv. Co.,* 394 So.2d at 365.

The initial determination as to whether a statement or action is sufficiently extreme or outrageous to support a cause of action for outrageous conduct is for the trial court to make as a matter of law. *Grimsley v. Guccione*, 703 F.Supp. 903, 907 (M.D.Ala.1988) (Thompson, J.).

■ Moreover, the Court in *Thomas*, after citing twenty Alabama cases where no jury question was presented on a claim for outrage, stated three limited circumstances where Alabama courts have allowed this claim to go to the jury:

(1) cases having to do with wrongful conduct in the context of family burials, *see Whitt v. Hulsey*, 519 So.2d 901 (Ala.1987) (reckless desecration of family burial ground by adjacent landowner sufficient to present a jury question as to claim of outrage), *Levite Undertakers Co. v. Griggs*, 495 So.2d 63 (Ala.1986) (defendant undertaker's wrongful retention of the remains of plaintiff's husband to force payment of funeral expenses sufficient to present a jury question as to claim of outrage), and *Cates v. Taylor*, 428 So.2d 637 (Ala.1983) (defendant's withdrawal of permission to use a burial plot 30 minutes before the planned burial sufficient to present a jury question on claim of outrage): (2) a case where insurance agents employed heavy-handed barbaric means in attempting to coerce the insured into settling an insurance claim, *National Security Fire & Cas. Co. v. Bowen*, 447 So.2d 133 (Ala.1983); and (3) a case involving egregious sexual harassment, *Busby v. Truswal Corp.*, 551 So.2d 322 (Ala.1989).

*Id.* at 1044. Plaintiff bases her outrage claim on the same allegations that form the basis of her discrimination claim and which are set out at length above. In every case where the Alabama courts have allowed this issue to go to the jury, the facts are far more egregious than those presented in this case. Given the limited nature of this cause of action, the court finds that the record simply does not disclose facts so poignant as to rise to the level of outrage. Because the court finds that Bivins has failed to carry her burden of proving a claim of outrage, summary judgment as to the tort of outrage claim is due to be granted.

■ The court, in closing, will address one final matter. The complaint in this case alleges violations of three federal statutes: 42 U.S.C. § 1981, 42 U.S.C. § 1983[8] and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–17, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. In the pretrial order[9], "which supersedes the pleadings," the court finds that plaintiff has abandoned her §§ 1981 and 1983 claims. *McGinnis v. Ingram Equipment Co., Inc.*, 918 F.2d 1491, 1494 (11th Cir.1990).

■ Moreover, the complaint fails to set forth a "short and plain statement ... showing that the pleader is entitled to relief." Rule 8(a)(2). *See Ogletree v. McNamara*, 449 F.2d 93, 98–99 (6th Cir.1971) ("[s]omething more than [a] conclusory allegation of systematic racial discrimination is required. Some facts as to when, how, to whom, and with what results such discrimination has been applied" are minimum requirements of Rule 8(a)). Not only does the complaint state broad conclusory allegations, but the pretrial order simply regurgitates the allegations in the complaint. Plaintiff has failed to state within any particularity anywhere in the record even the shortest statement of facts to back up the "umbrella" allegations.

## CONCLUSION

For the above reasons, judgment is due to be entered in favor of the defendants Jeffers Vet Supply and Keith Jeffers and against the

---

8. Plaintiff clearly has not established a violation under 42 U.S.C. § 1983, as plaintiff has not alleged state action.

9. Pursuant Fed.R.Civ.P. 16(e) and the court's order dated September 6, 1994, the parties prepared a joint pretrial order. The pretrial order controls the subsequent action of the litigation. The parties are bound by their order and may not introduce at trial issues excluded in the pretrial order. *See Jackson v. Seaboard Coast Line Railroad Co.*, 678 F.2d 992, 1015 n. 34 (11th Cir. 1982).

plaintiff Anita Bivins.[10]  A judgment in accordance with this memorandum opinion shall be entered separately.

**10.** The court, in an order dated November 7, 1994, denied defendant Keith Jeffers' motion to dismiss on the asserted ground that he cannot be held individually liable under Title VII.  Said denial was not on the merits;  the instant opinion disposes of the entire case.